FILED

**12/09/2022**

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

MARTIN GOTTESFELD, Petitioner, )
*pro se,* )
v. )
T. RULE, Warden of The )
Federal Correctional Institution, )
Terre Haute, Indiana, )
Respondent. )

2:22-cv-00571-JRS-MJD

No. _____

# PETITION FOR A WRIT OF HABEAS CORPUS (28 U.S.C. § 2241)

1. MARTIN GOTTESFELD, Petitioner, *pro se,* pursuant to 28 U.S.C. § 2241, hereby applies for a writ of habeas corpus commanding Mr. T. RULE, Respondent, warden of the Federal Correctional Institution (FCI) Terre Haute, Indiana, to effect

1) Petitioner's IMMEDIATE RELEASE from prison;

2) a grant of a one-year sentence credit for residential drug-abuse treatment to which Petitioner is entitled but of which Respondent deprived Petitioner without due process;

3) a grant of at least 111 days of First Step Act (FSA) time credits of which Respondent deprives Petitioners but to which Petitioner is entitled by correct statutory interpretation;

4) the return of 27 days earned good-conduct time (GCT) that Respondent unconstitutionally took from Petitioner as a result of Bureau of Prisons (BOP) incident report (IR) 3338082 (hereinafter the "court-access IR");

5) the return of a further 27 days GCT that Respondent unconstitutionally withholds from Petitioner as a result of BOP IR 3549119 (hereinafter the "RT IR");

6) the disqualification of the use of BOP IR 3552752 (hereinafter the "TAC IR") to lengthen in any way Petitioner's confinement; and

7) a grant of credit for 82 days and counting towards Petitioner's three-year supervised-release term for all days Petitioner wrongfully served in prison since his rightful release date: Sept. 14, 2022.

## I. This Court has jurisdiction and relief is available.

2. "Writs of habeas corpus may be granted by [...] the district courts [...] within their respective jurisdictions." 28 U.S.C. § 2241(a). "The plain language of the habeas statute thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004).[1] "The writ of habeas corpus shall not extend to a prisoner unless—(1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or [...] (3) He is in custody in violation of the Constitution or laws or treaties of the United States." § 2241(c).

3. Petitioner is a federal prisoner, registration no. 12982-104.

4. Petitioner is in the immediate physical federal custody of Respondent Warden Mr. T. Rule at the FCI Terre Haute, Indiana, inside this Court's district, The Southern District of Indiana.

5. Petitioner has no pending charges in any state or federal court. No detainer is lodged against Petitioner. And Petitioner is a natural-born U.S. citizen.

6. Petitioner was committed to Respondent's custody as a result of Petitioner's sole conviction and 121-month sentence, imposed Jan. 10, 2019. *See* Sentencing Tr., Jan. 10, 2019; Judgment, Jan. 11, 2019; *United States v. Gottesfeld*, 16-cr-10305-NMG (D. Mass.) ("Crim. Case").[2]

7. Petitioner hereby asserts he has overserved his sentence by 82 days and was entitled to a quantum change in custody to community confinement 201 days ago and counting, on May 18, 2022.

[1] Once obtained, however, jurisdiction is unaffected by a respondent's later transfer of a petitioner outside the Court's district. *In re Hall*, 988 F.3d 376, 378 (7th Cir. 2021) (distinguishing *Rumsfeld* from *Ex Parte Endo*, 323 U.S. 283 (1944) and rescinding case transfer). Petitioner objects to any transfer of the case at bar based upon Respondent's later transfer of Petitioner.

[2] The other details of the Crim. Case are irrelevant to this petition except to the extent they give rise to inferences of Respondent's retaliation against and suppression of Petitioner's protected conduct. *See, e.g.*, Michelle Malkin, *#FreeMartyG: Exposing America's Secret Prisons*, Creators Syndicate (Jan. 21, 2022), available at https://www.cnsnews.com/commentary/michelle-malkin-freemartyg-exposing-americas-secret-prisons ("Marty Gottesfeld, 37, is an American political prisoner"); David Kushner, *The Hacker Who Cared Too Much: How a Crusade to Save Children Landed a Hacker in Prison*, Rolling Stone (June 27, 2017), available at https://www.rollingstone.com/culture/culture-features/the-hacker-who-cared-too-much-196425. The government ultimately failed to prove the moral core of its case against Petitioner. *See* Verdict Form, Crim. Case (jury refused to convict under 18 U.S.C. § 1030(c)(4)(B)(i), (A)(i)(ii) ("the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals").

"[Section] 2241 is used for [...] challenges to the fact or duration of confinement." *Walker v. O'Brien*, 216 F.3d 626, 629 (7th Cir. 2000) (citing *Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 2000); *Carina v. United States*, 974 F.2d 924, 927 (7th Cir. 1992)). "[I]f a prisoner claims to be entitled to probation or bond or parole, his proper route is habeas corpus, even though he is seeking something less than complete freedom." *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991). Petitioner expressly disavows any construal of this petition as one seeking damages or any non-habeas relief. *See Castro v. United States*, 540 U.S. 375 (2003) (district court must warn *pro se* litigant before construing his pleading in a way that may deprive him of his rights).

## II. Rightful calculation of Petitioner's sentence and time credits

8.   "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Under this statute the BOP calculates a raw estimated full-term date ("Raw EFT") for each prisoner "by adding the total length of the sentence to be served to the beginning date of the sentence resulting in a full term date of sentence (*Raw EFT*) that does not include any time credit, e.g., presentence or prior custody time or good time." U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement 5880.28, Change Notice 7, Sentence Computation Manual (CCA of 1984) (July 19, 1999) ("Sent. Comp. Man.") at ch. 1.3(c) (emphasis in original). *See also id.* at ch. 1.3(b) (citing § 3585(a)).

9.   "The Bureau of Prisons calculates any part of a day in custody serving sentence[*sic*] as a *full day* served on the sentence and any part of a day in official detention as a *full day* for prior custody time credit purposes." *Id.* (emphasis in original) (citing Chapter I, paragraph 3.d, third subp.; 3.c.(1)).[3]

10.   Petitioner was sentenced to an aggregated 121-month prison term on Jan. 10, 2019. *Supra,* ¶ 6 (citing Sentencing Tr., Judgment).

11.   Using the BOP's method, Petitioner's Raw EFT is Feb. 9, 2029. *See* Sent. Comp. Man. at ch.

---

[3] The BOP thus awards a defendant detained pending sentencing and directly remanded thereafter credit for the day of sentencing as both one full day of jail credit and one full day served on the sentence.

1.3(e-1)(b) Example 3 (aggregated 120-month term runs from June *15*, 1988, to June *14*, 1998).

12.   The BOP calculates prior-custody time credit, or "jail credit," as a whole number of days then applies prior-custody time credit day-for-day to the Raw EFT. *Id.* at Manual SRA Sentence Computation Example No. 1 (crediting 24 days prior-custody time for six-month sentence imposed Feb. 25, 1989, after detainment on Feb. 1, 1989). Petitioner was arrested on the Crim. Case complaint Feb. 17, 2016. *See* Arrest Warrant Ret., Crim. Case. Petitioner was then continuously detained until sentencing, solely awaiting disposition of the Crim. Case. He thus earned 1059 days prior-custody time credit towards his sentence from Feb. 17, 2016, through Jan. 10, 2019.

13.   Petitioner's prior-custody-time-credit release date, i.e. 1059 days before his Raw EFT of Feb. 9, 2029, is Mar. 18, 2026. As one would expect, this is ca. 121 months after his arrest.

14.   Next to be calculated is statutory GCT: "The Bureau will award inmates up to 54 days of GCT credit for each year of the sentence imposed by the court. Consistent with this methodology, the Bureau will initially determine a projected release date by calculating the maximum GCT credit possible based on the length of an inmate's imposed sentence." 28 C.F.R. § 523.20(b)(1) (Feb. 11, 2022); 87 FR 7938, 7943.[4,5] "BOP calculates the projected GCT credit to be awarded for any portion of a sentence that is less than a full year at a prorated amount." 28 C.F.R. § 523.20(b)(2) (Feb. 11, 2022).[6]

15.   Petitioner earned his high-school diploma in 2002 from Andover High School, long before his sentence. Thus, the "maximum GCT credit possible" on Petitioner's 121-month sentence is 544 days (54 days per 12 months plus 4 days prorated credit for the one-month remainder). *See* 28 C.F.R. § 523.20(d)(2)(i) (high-school graduates earn the full 54 days GCT per year); 87 FR 7938, 7943 (same); Table 1, 87 FR 7940 (showing four days prorated GCT for one-month remainders on 25- and 37-month sentences). Applied to Petitioner's prior-custody-time-credit release date of Mar. 18, 2026, Petitioner's GCT statutory release date (SRD) is Sept. 20, 2024.

---

[4] Citations to the Federal Register take the form *Vol.* FR *Pg. [(Date)].*

[5] This new method derives from the FSA and abrogates the corresponding method from Sent. Comp. Man., which the BOP is yet to update.

[6] The BOP still appears to prorate partial-year GCT as 0.148 days GCT per day served, generally rounded down to the nearest whole number. *See* Sent. Comp. Man. at ch. 1.3(g).

16.  Next, Respondent has found Petitioner eligible for a full-year statutory credit towards his sentence for participation in the BOP's Residential Drug Abuse Program (RDAP, pronounced *ahr-dapp*).  *See* 18 U.S.C. § 3621(e)(2)(B).[7]  "The Bureau interprets the statutory language [of § 3621(e)(2)(B)] to mean that any sentence reduction of *one year or less* shall be deducted from the projected SRD." Sent. Comp. Man. at ch. 1.3(k) (emphasis in original).  The date produced as a result of the tentative sentence reduction shall be termed the *3621(e) Release Date.*" *Id.* (emphasis in original).  "SENTRY," i.e. the BOP's core business application, "is programmed to subtract one year from the projected SRD to produce the tentative *3621E Release Date.*" *Id.* (emphasis in original).  Thus, Petitioner's 3621E Release Date is Sept. 20, 2023.

17.  The Transitional Drug Abuse Treatment Program (TDAT, pronounced *tee-datt*) "is the third component of the RDAP." U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement 5330.11, Change Notice 1, Psychology Treatment Programs (Apr. 25, 2016) at § 2.7.1 Target Population.  "For inmates to successfully complete all components of RDAP, they must participate in TDAT in the community.  If inmates refuse or fail to complete TDAT, they fail the RDAP and are disqualified for any additional incentives." *Id.* (quoting 28 C.F.R. § 550.56(a)).  "Ordinarily, inmates who participate in the TDAT must receive no less than a 120-day placement in an RRC [residential re-entry center, i.e. halfway house].  It is not always possible to complete transitional drug abuse treatment in less than 120 days." *Id.* at § 2.7.2 RRC Placement.

18.  Petitioner's TDAT halfway-house date—120 days before his 3621E Release Date of Sept. 20, 2023—is May 23, 2023.[8]

19.  Last, because Petitioner is eligible for FSA time credits,[9] Petitioner's FSA time credits are

---

[7] The BOP's criteria for RDAP awards of less than a year's credit are inapplicable to Petitioner. *See* 28 C.F.R. § 550.55(c); U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement 5331.02, Change Notice 2, Early Release Procedures Under 18 U.S.C. § 3621(e) (Sept. 27, 2017) at ch. 10 Length of Sentence (credit limited only for sentences under 37 months).

[8] Petitioner recognizes that time spent in TDAT counts towards a sentence and is not supervised release.  Petitioner asserts TDAT is a "quantum change in the level of custody." *Graham*, 922 F.2d at 381 (citing *Brennan v. Cunningham*, 813 F.2d 1, 4–5 (1st Cir. 1987); *Miller v. McCollum*, 695 F.2d 1044, 1046 (7th Cir. 1983)).  Even exempting TDAT, however, Petitioner is entitled to immediate release. *See, infra,* ¶ 28 n. 14.

[9] Only prisoners serving sentences under expressly excluded statutes are ineligible for FSA time time credits. *See* 18 U.S.C. § 3632(d)(4)(D) (excluded statutory violations).  BOP paperwork and records unambiguously state that Petitioner is in fact eligible to earn and apply FSA credits.

applied: federal time credits (FTCs) "may be applied toward early release in addition to the early release benefit for RDAP graduates; however, inmates are still required to complete the required 120-day RRC/[home confinement] placement [TDAT]." *See* FCI Unit Team, *Inmate Message—Federal Time Credits (FTC) Auto-Calculation Launches* (Sept. 7, 2022) ("FCI Unit Team Msg. Sept. 7, 2022") at 2, Exh. 1 at 2.

20.   "A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i); U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement 5410.01 First Step Act of 2018—Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4) (Nov. 18, 2022) ("FSA Time Credit Proc.") at ch. 6 (quoting 28 C.F.R. § 523.42(c)(1)) (same). "A prisoner determined by the Bureau of Prisons to be at a minimum or low risk of recidivating, who, over 2 consecutive [risk] assessments, has not increased [his] risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation." 18 U.S.C. § 3632(d)(4)(A)(ii); FSA Time Credit Proc. at ch. 6 (quoting 28 C.F.R. § 523.42(c)(2)) (same). "A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed [...] prior to [Dec. 21, 2018]." 18 U.S.C. § 3632(d)(4)(B)(i). *See also* FSA Time Credit Proc. at ch. 6 (quoting 28 C.F.R. § 523.42(b)(1)) (same). "An eligible inmate, as defined in this subpart, may earn FSA Time Credits for programming and activities in which he or she participated from December 21, 2018, until January 14, 2020." *Id.* (quoting 28 C.F.R. § 523.42(b)(2)). But, "A prisoner may not earn time credits under this paragraph [...] during official detention prior to the date that the sentence commences under [18 U.S.C. §] 3585(a)." 18 U.S.C. § 3632(d)(4)(B)(ii). *See, supra*, ¶ 8 (quoting § 3585(a)). "Time Credits for successful participation are awarded at the end of each thirty-day period." 87 FR 2705, 2711.[10] Due to "administrative difficulties," the BOP announced on Jan. 19, 2022: "Eligible inmates will be afforded a presumption of participation for the period between December 21,

---

[10] The BOP seems to keep running tallies of each eligible prisoner's FSA-participation days and to carry-over remainders, such that, *e.g.*, an eligible prisoner who partipates for 45 days from Apr. 1st through May 15th, then stops participating, before continuing again to participate a further 15 days from June 1st through June 15th, would be awarded FSA time credits on Apr. 30th and again on June 15th.

2018, and January 14, 2020 and be awarded Time Credits accordingly." 87 FR 2705, 2708.[11]

21.  Under 18 U.S.C. §§ 3585(a), 3632(d)(4)(B)(ii), Petitioner's sentence formally commenced Jan. 10, 2019. *See, supra,* ¶ 6 (sentence imposed Jan. 10, 2019). He was thus presumed to have participated for 370 days from Jan. 10, 2019, to Jan. 14, 2020.[12]

22.  "During the 'presumed participation' period and through April 28, 2021, the PATTERN [recidivism] risk level calculated on April 28, 2021 (PATTERN auto-calculation start date), will be used to determine the initial risk level and FTC earning rate." FCI Unit Team Msg. Sept. 7, 2022, at 1. Petitioner's PATTERN risk was first assessed as low ca. Jan. 14, 2020. To his knowledge it has remained low ever since.

---

[11] The BOP initially also claimed: "Inmates will not receive credit for any period in which they were in a special housing unit." *Id.* More recently, however, the BOP reversed that stance, telling Petitioner: "you will be able to earn credit while in administrative detention [in a SHU]." *See* FCI Legal Dept., Inmate Message First Step Act Time Credits Calculation (Nov. 18, 2022) ("FCI Legal Dept. Msg. Nov. 18, 2022") at 2, Exh. 2 at 2. In any event, Petitioner is prepared to show he was deprived of due process during his two potentially relevant periods of administrative detention: Feb. 15, 2019, through Mar. 31, 2019, and Dec. 9, 2019, through Jan. 14, 2020. Petitioner "has a protected liberty interest in his good-time credits and credit-earning class, and he may not be deprived of either without the minimum requirements of due process." *Calligan v. Wilson,* 362 F. App'x 543, 545 (7th Cir. 2009) (citing *Piggie v. McBride,* 277 F.3d 922, 924 (7th Cir. 2002)). But he was never afforded an administrative-detention order or hearing from Feb. 15, 2019, through Mar. 31, 2019. *See* Affidavit of Martin Gottesfeld, Mar. 11, 2019, at 1, ¶ 7 ("I have never been advised of any administrative detention hearing nor administrative detention order regarding the [...] 23 days and counting from the night of Friday, February 15th, 2019, through the present"), *Gottesfeld v. Hurwitz, et al.,* 18-cv-10836-PGG-GWG (S.D.N.Y.) (*Hurwitz*), dkt. 13 (entered Mar. 15, 2019). And he was afforded no administrative-detention hearing from Dec. 9, 2019, through Jan. 14, 2020. *Contrast:* "Within seven continuous calendar days of your placement in either administrative detention or disciplinary segregation status, the [segregation review official] will formally review your status at a hearing you can attend." U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement 5270.11 Special Housing Units (Nov. 23, 2016) at ch. 7 (quoting 28 C.F.R. § 541.26(b)). Petitioner asked for but did not receive "a BP-8" on Feb. 15, 2019. Affidavit of Martin Gottesfeld, Mar. 11, 2019, at 3, ¶ 26.

[12] Petitioner acknowledges the BOP's statement when it announced the presumed-participation period: "Inmates will not receive credit for any period in which they were in a special housing unit, in a designation status outside the institution, [or] temporarily transferred to the custody of another Federal or non-Federal government agency." 87 FR 2705, 2708. The BOP already reversed some of these provisos, *supra,* n. 11 (SHU no longer disqualifying); FCI Legal Dept. Msg. Nov. 18, 2022, at 2 ("you will be able to continue earning credit while in the community"), Exh. 2 at 2. To Petitioner's knowledge he was never "in a designation status outside the institution," such as a halfway house or home confinement, or "transferred" *from* the BOP to the custody of "another agency." The BOP seems to agree. *See* FSA Recidivism Risk Assessment of Martin Gottesfeld, Aug. 23, 2022 ("Start Incarceration..: 01/10/2019"), Exh. 3. And under lenity Petitioner should not now be denied credit based on ambiguous, non-statutory, non-regulatory language adopted retrospectively, especially when, as here, had Petitioner known at the time between his sentencing and BOP entry, he could have and would have commenced court actions and other protected conduct to secure his unambiguous credit-earning status earlier.

23.  During presumed participation the BOP appears to allot to low-recidivism-risk prisoners, including Petitioner, 10 days of FSA credits for their first 30 days participation then 15 days of credit per 30 days participation thereafter.[13] Using this method Petitioner earned 175 days time credits for his 370 days presumed participation from Jan. 10, 2019, to Jan. 14, 2020, and a remainder of 10 days of participation to carry forward.

24.  The BOP next offered Petitioner FSA participation ca. summer 2021 in the form of a drug-education class at FCI Terre Haute. *See* U.S. Dep't of Justice, Fed. Bureau of Prisons, *Evidence-based Recidivism Reduction (EBRR) Programs and Productive Activities* (PA) (posted by the FCI Reentry Affairs Dept. Feb. 24, 2020) at 3, second row ("Drug Education" is an FSA producitve activity), Exh. 4 at 4. Petitioner cannot recall the exact duration of the course. It was approx. 10 weeks. Petitioner passed the class with a perfect score.

25.  Petitioner's approx. 10 weeks, or 70 days, of drug ed., added to his 10 days carry-over credit, yielded another 30 days FSA credit with a 20-day carry-over remainder. Added to his 175 days credit from the presumed-participation period, Petitioner had a total of 205 days time credits.

26.  Under the FSA, the BOP was required to "provide such evidence-based recividism reduction programs and productive activities for all prisoners before" Jan. 15, 2022. 18 U.S.C. § 3621(h)(2)(A). Nevertheless, across the BOP FSA programs remain unforthcoming. In the meantime the BOP once again effectively presumes participation for prisoners, including Petitioner, who timely complied with all needs assessments and program sign-ups. *See, generally,* FCI Legal Dept. Msg. Nov. 18, 2022 (discussing "needs assessments" and establishing a "grace period" "until December 31, 2022," in which to complete needs assessments and sign-ups).

27.  Thus far, from Jan. 14, 2022, through Dec. 5, 2022, Petitioner has accumulated a further 326 days of FSA participation. Added to Petitioner's previous 205 days credit and 20-day participation carry-over, this totals 370 days of credit with a 16-day carry-over (20 days of carry-over

---

[13] Mr. Allen Pillow, for example, was presumed to participate for 211 days "from June 7, 2021, through December 25, 2021," and scored "at a low risk for recidivating." *Pillow v. Bureau of Prisons,* 2022 U.S. Dist. LEXIS 192489, No. 4:22-cv-713 PSH (E.D. Ark. Oct. 21, 2022) at *9, ¶¶ 5–6. The BOP ultimately awarded Pillow 100 days of time credits for his 211 days participation. *Id.* at ¶¶ 5, 14. From this the logical inference is the BOP awarded Pillow 10 days credit for his first 30 days participation, then 15 days credit for the remaining six 30-day participation periods (10 + 15 x 6 = 100).

participation plus 326 days new participation equals 346 days participation; 346 days participa-

tion divided by 30 days per credit block, multiplied by 15 days credit per block, equals 165 days

of new credit with a 16-day participation carry-over; 205 days of previous credit plus 165 days of

new credit equals 370 days of credit).

28.   Adjusting Petitioner's May 23, 2023, TDAT halfway-house date forward 370 days puts his FSA-

adjusted halfway-house date at May 18, 2022—more than six months ago. Petitioner is thus entit-

led to immediate release.[14]

### III. Respondent must credit Petitioner for RDAP.

29.   Respondent had until the end of fiscal-year 1997 to make the Residential Drug Abuse Program

(RDAP) available to "all eligible prisoners." 18 U.S.C. § 3621(e)(1)(C). Compounding this 25-

year-old deadline, Respondent was required to make evidence-based recidivism-reduction programs

(EBRRs), which include RDAP, available to all prisoners before Jan. 15, 2022. And Respondent has

unambiguously determined that Petitioner is eligible for RDAP and for a one-year sentence reduc-

tion under 18 U.S.C. § 3621(e)(2)(B). See Gauthier, C. Psy.D., Bureau of Prisons Psychology Ser-

vices RDAP—Diagnostic Interview of Martin Gottesfeld (REDACTED) at 2 ("A review of available doc-

umentation reveals that inmate GOTTESFELD is QUALIFIED to participate in the Residential Drug Ab-

use Program (RDAP)"), Exh. 5 at 2; Form BP-A0942 Request for § 3621(e) Offense Review of Martin

Gottesfeld at 2 ("Based on the above criteria and analysis, this inmate's current and/or prior

offense(s)[...] DOES NOT PRECLUDE him/her from early release pursuant to 18 U.S.C. §

3621(e)(2)(B)"), Exh. 6 at 2; 18 U.S.C. § 3621(e)(2)(B) ("The period a prisoner convicted of a

nonviolent offense remains in custody after successfully completing a treatment program [RDAP] may

be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the

term the prisoner must otherwise serve").

30.   The BOP's criteria for reductions under 12 months, i.e. 1) sentences under 37 months and 2)

the need to complete community treatment, are both inoperative at bar. See U.S. Dep't of Justice,

Fed. Bureau of Prisons, Program Statement 5331.02, Change Notice 2, Early Release Procedures Under

---

[14] Even if denied the 120 days for TDAT, the 54 days contested GCT and the 111 days contested FSA
time credits, i.e. applying only the one-year credit for RDAP and the 259 days FSA credits that
the parties seem to agree are due, Petitioner's release date would be Mar. 1, 2023—less than
four months from the filing date of this petition.

18 U.S.C. § 3621(e) (Sept. 27, 2017) at ch. 10 Length of Sentence. Indeed, "the BOP has decided ... that all eligible inmates who successfully complete[] the 500 hour residential drug and alcohol treatment program [will] receive a one-year reduction to his or her sentence." *Hines v. Crabtree*, 935 F. Supp. 1104, 1110 (D. Or. 1996) (quoting Answer of FCI Sheridan Warden Joseph H. Crabtree) (ellipsis and alterations in original) (granting immediate release from custody).[15]

31.   Petitioner requested RDAP in writing ca. August 2021. BOP agents Mr. Todd Royer and Ms. Rebekka Eisele soon told Petitioner he was a minimum-security prisoner and they were putting him in for transfer. Petitioner reasonably interpretted this to mean he was going to RDAP.

32.   In November 2021 Respondent confirmed Petitioner was placed on the RDAP interview list. But Respondent also told Petitioner he would have to leave the communications-management unit (CMU) in which he was administratively housed to attend RDAP.

33.   On January 21, 2022, Respondent transferred Petitioner not to RDAP, but to another CMU in Marion, IL.

34.   Immediately upon arrival at Marion Petitioner again requested RDAP from the BOP, both orally and in writing. BOP Psychologist Dr. Fields, Psy.D., J.D. placed Petitioner on the RDAP-interview list.

35.   On April 20, 2022, Public Health Service Psychologist Dr. C. Gauthier, Psy.D., interviewed Petitioner for RDAP and found him eligible. *See, again,* Gauthier, C. Psy.D., Bureau of Prisons Psychology Services RDAP—Diagnostic Interview of Martin Gottesfeld (REDACTED), Exh. 5. No subse-

---

[15] Petitioner recognizes but views as inapposite *Bush v. Pitzer*, 133 F.3d 455, 458–59 (7th Cir. 1997) ("A prisoner whose *offense* was 'nonviolent' is eligible in the same sense that the Bureau *could* release him early, but the Bureau need not extend the program to the maximum extent the statute permits") (emphasis in original). The events in *Bush* preceded Respondent's statutory obligation to extend RDAP to "all eligible prisoners" under § 3621(e)(1)(C) and adoption of the relevant policies widely entitling prisoners today to RDAP sentence reductions, as well as RDAP's designation as an FSA EBRR available to all prisoners under § 3621(h)(2)(A). *See Evidence-based Recidivism Reduction (EBRR) Programs and Productive Activities (PA)* at 1 (RDAP is an FSA EBRR), Exh. 4 at 2. And Petitioner's Section-3621(e) eligibility has been conceded and cannot be seriously contested. No "sensible grounds," *Bush* at 458, exists to exclude Petitioner, a minimum-security prisoner, from RDAP, which is available even to high-security prisoners. Congress, moreover, expected the BOP to make RDAP early-release determinations "based on criteria to be established and uniformly applied." H.R. Rep. No. 103-320 (1993). No such criteria excluding Petitioner were formally established and certainly excluding one individual, Petitioner, placed under communications management for his publiction of unflattering (but true) news articles about the Justice Department, cannot reasonably be construed as uniform application. Bush also brought no due-process challenge, 133 F.3d at 456, but Petitioner does so, *infra,* ¶ 43.

quent evaluation has been performed. Shortly after the interview the BOP's Designation and Sentence Computation Center (DSCC) determined that Petitioner is eligible for the RDAP sentence reduction under § 3621(e)(2)(B). *See, again,* Form BP-A0942 Request for § 3621(e) Offense Review of Martin Gottesfeld, Exh. 6.

36. On April 27, 2022, Petitioner filed a Standard Form 95 claiming damages for denial of RDAP without due process, Exh. 7. *But, see, again, supra,* ¶ 7 (Petitioner disavows any construal of *this petition* as one seeking damages). The next day Petitioner attempted informal resolution. *See* Administrative Remedy—Informal Resolution ("BP-8") as Subm., Exh. 8. BOP staffers in Marion assured Petitioner the matter was being attended-to. Informal resolution then went on for nearly six months until October 12, 2022,[16] before Petitioner could file a formal remedy request ("BP-9") with the Marion warden.

37. Petitioner then timely filed a BP-9 at Marion. *See* Request for Administrative Remedy as Subm. Oct. 14, 2022, Exh. 9.

38. Twenty-seven days thereafter, i.e. before the BP-9 answer deadline, the Marion Warden transferred Petitioner back to CMU Terre Haute. Petitioner's Marion BP-9 for RDAP has never been answered.

39. As soon as practicable upon his arrival back in Terre Haute Petitioner again attempted informal resolution for RDAP. *See* FCC Terre Haute BP-8—Informal Resolution for RDAP, Exh. 10.

40. Petitioner was told he could not attend RDAP due to his CMU placement. *Id.* at 2 (Response of M. Myers).

41. Petitioner timely filed Terre Haute RDAP BP-9, Exh. 11. He also timely filed a central office remedy appeal ("BP-11"). *See* RDAP BP-11, Exh. 12 (quoting 28 C.F.R. § 542.14(d)(5) ("formal administrative remedy requests regarding initial decisions that did not originate with the Warden[*sic*], or his/her staff, may be initially filed with the Bureau office which made the original decision"); U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement 5214.02 Communications Management Unit (Apr. 1, 2015) ("CMU Prog. Stat.") at ch. 3(e) ("Only the Assistant Direc-

---

[16] Petitioner notes there is no time limit for informal resolution. *Cf.* 28 C.F.R. § 542.18 (establishing time limits for all other remedy stages, but not establishing any time limit for informal resolution).

tor (or Acting Assistant Director), Correctional Programs Division, has the authority to designate an inmate to a CMU")).

42.  Petitioner's BP-9 and -11 remain unanswered.

43.  Once again, Petitioner "has a protected liberty interest in his good-time credits and credit-earning class, and he may not be deprived of either without the minimum requirements of due process." *Calligan,* 362 F. App'x at 545 (citing *Piggie,* 277 F.3d at 924). No hearing was ever conducted either to deprive Petitioner of RDAP credit or to place him in a CMU. No written finding supports depriving Petitioner of RDAP or RDAP sentence credit: to the contrary every relevant written determination supports his eligibility.

## IV.  Respondent must abide by the First Step Act of 2018.

44.  Petitioner has little visibility into Respondent's FSA time-credit calculations. And the BOP has kept its methodology in flux since the FSA's enactment. On Oct. 28, 2022, Petitioner was given his very first paperwork purporting to show his time credits, as of Oct. 27, 2022. That first report indicated Petitioner had earned 244 days of time credits and that his halfway-house-slash-home-confinement eligibility date was in October 2023.

45.  Petitioner forthwith went to work to confirm or refute the calculation. But then he was required to "pack-out" his property, including his paper records, ten days later, Nov. 7, 2022. He was transferred three days later on Nov. 10, 2022.

46.  Petitioner was then kept in quarantine or administrative segregation—with neither an administrative-detention order nor hearing—until Nov. 17, 2022. Upon Petitioner's release from segregation, he completed an initial set of calculations and discovered a 54-day-credit discrepency.

47.  Petitioner attempted informal resolution at FCI Terre Haute. *See* BP-8 for FSA Credit, Exh. 13. Upon Petitioner's completion of the comprehensive calculations detailed, *supra,* ¶¶ 19-28, he mailed a relevant BP-9 and two regional administrative-remedy appeals ("BP-10s"), Exh. 14. He has received no responses.

48.  Petitioner searched for U.S. court precedents indicating that Section-2241 relief is or is not available for FSA time credits but found none. He notes, generally, however, that "[section] 2241 is used for [...] challenges to the fact or duration of confinement." *Walker,* 216 F.3d at

629.  As for Respondent's discretion to apply time credits "toward time in prerelease custody or supervised release," 18 U.S.C. § 3632(d)(4)(C), Petitioner notes that either would be "a quantum change" in his "level of custody" and "habeas corpus is his remedy." *Graham*, 922 F.2d at 381.

## V.  Respondent must return Petitioner's GCT for the court-access IR 3338082.

49.  Though the merits remain ripe and unadjudicated, Court-access IR 3338082 was already the subject of comprehensive briefing before this Court. *See, generally, Gottesfeld v. Lammer*, 2:20-cv-12-JRS-MJD (S.D. Ind.) (*Lammer*).[17]

50.  Petitioner herein incorporates by reference his relevant, yet-to-be-considered *Lammer* filings, *e.g.*,

- Petition, dkt. 1;
- Declaration of Martin Gottesfeld re *Exhaustion, Retaliation & Justiciability* (ERJ Decl.), dkt. 100;
- Amended Reply in Support of Petition, dkt. 101;
- Motion to Supplement or Amend, dkt. 102;
- Rule 59(e) Motion, dkt. 106; and
- Reply in Support of Rule 59(e) Motion, dkt. 109.

51.  Petitioner, for example, asserts he has no duty to provide redundant pro forma denials of Respondent's responsive pleading. *See* Amended Reply in Support of Petition at 2, § 2 Disputing and Conceding Facts (citing cases, court rules, statutes, etc.).  Instead Respopndent is he who must adequately contest or concede facts.  *Id.*  Should Respondent contest exhaustion as to any of Petitioner's claims, Petitioner requests limited discovery and a hearing.  *Id.* at 5, § 5 Criteria for Petitioner to Conduct Discovery (citing, *inter alia, Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)).  When it comes specifically to Court-access IR, Petitioner had already exhausted on the persistent suppression of his access to courts.  *Id.* at 6, § 6 Petitioner Exhausted Even Though Exhaustion Is Inapplicable (citing, *inter alia, Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) ("In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing"); Court-access BP-11 Cent. Office's Resp. ("You state you

---

[17] The Court dismissed *Lammer* "without prejudice." Final Judgment, *Lammer*, dkt. 98 (July 18, 2022).  In so doing the Court, on procedural grounds inapplicable to the case at bar, declined to consider Petitioner's arguments re exhaustion and retaliation. *See* Order Denying Rule 59(e) Motion, *Lammer*, dkt. 111 (Oct. 28, 2022).

have the right to access the Courts without interference or delay"), *Lanmer*, dkt. 100-58 at 2).

52.  And, more, generally, "Petitioner had already exhausted on due-process grounds" of vagueness of BOP prohibited-act code 204 as applied in Court-access IR 3338082. Amended Reply in Support of Petition at 8—10, *Lanmer*, dkt. 101.

53.  Petitioner also exhausted as to retaliation against protected conduct. *Id.* at 10—11 (citing, *inter alia*, Petition at ¶¶ 124—25 (Petitioner "timely filed another BP-8," i.e. the Eisele BP-8, "in which he noted that agents of [R]espondent were retaliating against [P]etitioner's Constitutionally-protected petitions to the government for the redress of grievances," but he received no response), *Lanmer*, dkt. 1 at 24); *Barnett v. Harlow*, 2019 U.S. Dist. LEXIS 94080, No. 2:18-cv-397-JMS-MJD (S.D. Ind. June 5, 2019) at *7 (BP-8s are "not recorded in [the BOP's] SENTRY database"); *Turley* at 650 n. 3 ("[W]hen the prisoner follows procedure but receives no response due to error by the prison, this court has found that the prisoner exhausted"); ERJ Decl. ¶¶ 177, 221, 243, 255, 266—68, 271—72, 307 (appeals of unanswered BP-8 for copy of withheld DHO report were rejected at all remedy levels), *Lanmer*, dkt. 100; *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (this circuit does not permit prison officials "to exploit the exhaustion requirement through indefinite delay in responding to grievances") (internal quotation marks and citation omitted)).

54.  Further, Respondent is estopped from raising exhaustion. *See* Amended Reply in Support of Petition § 7, *Lanmer*, dkt. 101 at 11—12. Petitioner expressly notes: "The fact that [Prisoner] was able to file his FTCA claim and [a] lawsuit does not prove that remedies were available within the [prison] system." Rule 59(e) Motion § 3, *Lanmer*, dkt. 106 at 4 (quoting *Kaba v. Stepp*, 458 F.3d 678, 686 (7th Cir. 2006) (first and third alterations in Motion, second alteration applied)). "Threats or other intimidation by prison officials may well deter a prisoner of ordinary firmness from filing an internal grievance, but not an external one because the latter might avoid threatened retaliatory conduct from prison employees." *Id.* (quoting *Kaba* at 686 (internal quotation marks, alterations and citations omitted)).

55.  Exhaustion, moreover, is inapplicable to the Court-access IR for four distinct reasons. *See* Amended Reply in Support of Petition § 8, *Lanmer*, dkt. 101 at 12—17 (citing, *inter alia*, *Iddir v.*

*INS*, 301 F.3d 492, 498 (7th Cir. 2002)). First, Court-access IR raises a substantial constitu-
tional question "when BOP—a U.S. agency—in response to Petitioner's exhaustion, deprived him of
earned GCT, subjected him to atypical and significant hardships, fined him and destroyed his prop-
erty, based on a vague regulatory promulgation, thus depriving him of his expressly protected
rights to petition and due process." Amended Reply in Support of Petition § 8(a), *Lammer*, dkt.
101 at 13 (internal quotation and alteration marks and citations omitted). Second, further ex-
haustion meant unreasonable, indefinite and prejudicial delay, *e.g.*, causing essential evidence to
spoliate absent this Court's order to preserve it. *Id.* § 8(b) (citing ERJ Decl. ¶¶ 304–06, *Lam-
mer*, dkt. 100 at 41 (Respondent refused to preserve evidence absent this Court's order)). Third,
the "BOP expressly disavows administrative review of DHO findings for statutory or constitutional
violations." *Id.* § 8(c) (citing, *inter alia*, U.S. Dep't of Justice, Fed. Bureau of Prisons, Prog-
ram Statement 5270.09 Inmate Discipline Program (July 8, 2011) at ch. 5 ("The decision of the DHO
is final and subject to review only by the Regional Director to ensure conformity with the disci-
plinary policy"; "On appeals, the reviewing authority considers: Whether the UDC or DHO substan-
tially complied with regulations on inmate discipline"). And, fourth, the BOP is biased and pre-
determined the outcome of the DHO proceeding. *See id.* § 8(d) (the BOP gave itself a fifty-dollar
pecuniary interest in the matter and enjoys protection from suit under *Edwards v. Balisok*, 528
U.S. 641, 645–46 (1997)).

56.   The challenged discipline—overtly imposed against Petitioner's unambiguous statutory ex-
haustion before filing in court—was clearly unconstitutional. *See id.* §§ 9, 9(a) (providing
authorities holding that retaliatory discipline invalidates prison administrative proceedings,
prisoners may not be disciplined in any way for making reasonable attempts to petition the courts,
and that vague restrictions on protected conduct are unenforceable, as well as noting the total
lack of admissible evidence as to Eisele's state of mind and requesting leave to propound inter-
rogatories).

57.   And the challenged disciplinarian was biased and without credibility. *See id.* § 9(b) (noting
that alternate DHO D. Matthews was Complainant's fellow case manager and that Matthews nowhere
denied his bias or that he had predetermined the outcome of the disciplinary hearing).

58.  Petitioner was also denied exculpatory documentary and testimonial evidence. *See id.* § 9(c) (noting Petitioner requested and the DHO withheld without explanation relevant audio and video footage and legal documents, preventing Petitioner from completing a written statement).

59.  Petitioner further notes that the consistent inferences of machination and retaliation against Petitioner's remedy and court filings detailed in the incorporated *Lanmen* filings are also relevant to the requests for relief at bar as to Respondent's denial of Petitioner's RDAP and FSA credits, *supra.*

60.  Last on this topic, Petitioner notes relevant events subsequent to the incorporated *Lanmen* filings.

61.  On Aug. 9, 2022, Petitioner received a second rejection of regional remedy 1120431 seeking the expungement of the Court-access IR, Exh. 15. It had taken 12 days for the remedy to be cleared by the CMU's censors and reach the regional office after Petitioner prepared the filing June 15, 2022. *See* Court-access IR 3338082 BP-10 II Rej. Ntc. ("DATE RECEIVED: JUNE 27, 2022"), Exh. 15 at 2. Regional then took three days to decide to reject it. *Id.* ("DATE: JUNE 30, 2022"). A further 27 days then passed before the rejection notice was marked received back in Marion. *Id.* ("RECEIVED JUL 27 2022 M"). Another 12 days then passed before Marion placed the rejection "in the inmate mailbox back to the inmate." Memo. re 1120431-R2 ("August 8, 2022"), Exh. 15 at 1. Petitioner then received the rejection the following day, a round-trip time of 55 days.

62.  Regional again rejected the remedy based upon an unwritten rule found nowhere in remedy policy or federal regulation: "YOU DID NOT PROVIDE A COPY OF THE DHO REPORT YOU WISH TO APPEAL OR IDENTIFY THE CHARGES AND DATE OF THE DHO ACTION." Court-access IR 3338082 BP-10 II Rej. Ntc., Exh. 15 at 2. Regional did this despite Petitioner's stating clearly the charges and date of the DHO action. *See* Court-access IR 3338082 BP-10 II Form As Ret. ("DHO action taken 12-20-2019, charge 204A attempted extortion"), Exh. 15 at 3.

63.  Left to experiment, Petitioner retrieved from his records a copy of the DHO report and filed a third BP-10 with the DHO report instead of, as regional had expressly told him would be sufficient, merely specifying the charge and date of the DHO action. *See* Court-access IR 3338082 BP-10 III As Subm. (Aug. 9, 2022), Exh. 16.

64.  On Sept. 27, 2022, Petitioner received back a third rejection. *See* Court-access IR 3338082 BP-10 III As Rej., Exh. 17. The remedy had taken eight days to clear the CMU and arrive at re-gional. *See* Court-access IR 3338082 BP-10 III Rej. Ntc. ("DATE RECEIVED: AUGUST 17, 2022"), Exh. 17 at 1. Regional then took 23 days to decide to reject the remedy. *Id.* ("DATE: SEPTEMBER 9, 2022"). The remedy then took another 11 days to arrive back at Marion. *Id.* ("RECEIVED SEP 20 2022 MW"). A full week then passed before Petitioner received back the rejection. *Id.* ("Recv'd 9-27-22 N[athan] S[impkins]"). The total round-trip time was 49 days. The stated reason for the rejection was: "YOUR APPEAL IS UNTIMELY." *Id.* at REJECT REASON 1. Regional did not attempt to address my citation in the BP-10: "I note 28 C.F.R. [§] 115.52(b)(1) ('The agency shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse')." Court-access IR 3338082 BP-10 III Form As Ret., Exh. 17 at 2.

65.  Petitioner timely appealed the rejection. *See* Court-access IR 3338082 BP-11 As Subm. (Sept. 30, 2022) (citing 28 C.F.R. §§ 542.17(b), (c) (inmate may appeal a rejection if not given an op-portunity to resubmit at the same level), 115.52(b)(1) (no time limit on PREA-related grievances), 115.67(c) (BOP must act promptly to remedy retaliation against PREA reporting)), Exh. 18.

66.  Sixty-three days later, having received no response, Petitioner wrote to his former case man-ager to confirm the remedy had in fact been mailed. *See* Inmate Request to Staff to Nathan Simp-kins re Remedies (Dec. 2, 2022), Exh. 19.

67.  Petitioner has received no response to Court-access IR 3338082 BP-11 As Subm., Exh. 18.

   **VI.  Respondent must return Petitioner's GCT for the *RT* IR 3549119.**

68.  Sufficient background regarding the *RT* IR 3549119 is recited in ERJ Decl., *Lammer*, dkt. 100, already herein-incorporated: Petitioner's many news outlets that publish his writing include *RT*. *See* Martin Gottesfeld, *My life in a US death-row prison complex plagued by killings, Covid and ab-use, while the executioners get busy*, RT (July 2021). Respondent knew that Petitioner's wife Mrs. Dana Gottesfeld edits his work, including the aforecited article, for *RT*, because he monitored Petitioner's and Mrs. Gottesfeld's communications during the editing process. *See, generally,* 28 C.F.R. §§ 540.200 *et seq.* (CMU prisoners subject to total communications monitoring, including of news media contacts). Nevertheless Respondent charged Petitioner with circumvention of communica-

tions monitoring when Mrs. Gottesfeld published quotations from Petitioner at *RT* about Respondents illegal conduct in violation of the Prison Rape Elimination Act (PREA). *See* RT, *'The law doesn't apply in America anymore,' hacktivist Marty Gottesfeld talks to RT from jail* (Sept. 18, 2021) available at https://www.rt.com/usa/535207-marty-gottesfeld-law-interview/amp/.

69.   Respondent found Petitioner guilty of the charge Dec. 1, 2021—more than a year ago.

70.   Nearly five months later Petitioner began filing remedies to obtain, as is his right, a written statement of findings from the factfinder who heard the *RT* IR 3549119.

71.   Subsequent to the events recited in ERJ Decl., *Lammer*, dkt. 100, Petitioner received Regional Director Andre Matevousian's response: "Your allegation has been referred to the appropriate authorities for investigation.   A thorough investigation will be conducted and you will be notified of the outcome."   *RT* IR 3549119 BP-10 Reg. Director's Resp. (July 1, 2022), Exh. 20 at 1.   The round-trip time for regional's answer was 94 days.   Regional provided no definite time frame in which the BOP would resolve the remedy. *Id.*

72.   Petitioner forthwith completed and mailed a central-office appeal of regional's unproductive answer. *See RT* IR 3549119 BP-11 As Subm. (Aug. 1, 2022), Exh. 21 at 1 ("I seek only the DHO report re incident report (IR) 3549119 to comply with my due-process right to a copy of the factfinder's written reason(s) for the action taken, or, in the alternative, the expungement of the IR") (citing *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (due process requires, *inter alia*, the ability to call witnesses, disclosure of expulpatory evidence, an impartial decisionmaker and written findings)).   Petitioner asserted: "My calls are not subject to my securing assurances not to be quoted to the press, esp. regarding flagrant violations by Bureau of Prisons communications-management unit (CMU) staffers of the Prison Rape Elimination Act (PREA)." *RT* IR 3549119 BP-11 Cont. Pg. (Aug. 1, 2022), Exh. 21 at 2.

73.   Ca. 81 days later Petitioner received *RT* IR 3549119 BP-11 Ack. & Ntc. of Ext. (Oct. 21, 2022), Exh. 22.   The central office noted its response was due Oct. 24, 2022. *Id.*

74.   As of Dec. 5, 2022, Petitioner has received neither the relevant DHO report nor an answer from the central office.   Under 28 C.F.R. § 542.18 Response Time the matter is exhausted.

75.   Further, for Respondent to produce the DHO report now, more than a year after the hearing and

months after Petitioner's rightful release date, is a constructive denial of the report for use in habeas proceedings that cannot be remedied, especially at the glacial pace Petitioner has documented for Respondent's handling of remedy filings required before Petitioner can go to the Court. Cf. IDS Life Ins. Co v. SunAmerica, Inc., 103 F.3d 524, 526 (7th Cir. 1996) (Posner, J.) (unjustiable delays are constructive denials, "Otherwise the lower court or agency would have the judicial or administrative equivalent of a pocket veto").

76.  And it's anything but unintentional. As Petitioner already told this Court: "The CMU program stakes its supposed legitimacy on holding prisoners from gen. pop. based on their discipline histories. Prisoners with guilty findings for IRs cannot generally leave until they are discipline-free for a year or more. In practice—and in my case in particular, as well as other politically sensitive cases—new IRs are filed as older ones age out or are expunged, such that when prisoners' designations are reviewed they each have at least one IR, often frivolously unconstitutional, that is too recent to have exhausted and taken to court. By the time each could dispose of his current disciplinary obstacle, Respondent et al. have concocted a new one and, e.g., withheld the DHO report or rejected legitimate remedies." ERJ Decl. at 18, ¶ 142, Lanmer, dkt. 100.

77.  Because Respondent has withheld the DHO report for RT IR 3549119 long past when Petitioner could hope to have sufficient time to challenge its findings—as well as because the IR itself is plainly retaliatory—Respondent must now expunge RT IR 3549119 and return Petitioner's 27 days GCT that was taken as a result of it.

VII.  **Respondent cannot use the TAC IR 3552752 to prejudice Petitioner.**

78.  Like the RT IR 3549119, sufficient background regarding the TAC IR 3552752 is recited in ERJ Decl., Lanmer, dkt. 100, already herein-incorporated: Shortly after the RT IR 3549119 Respondent again punished Petitioner for a call with a journalist during which Petitioner mentioned PREA violations at FCI Terre Haute. This most recent instance, however, Respondent chose not to take Petitioner's GCT, although the IR may still be used, effectively, to lengthen Petitioner's confinement by, e.g., applying FSA time credits towards prerelease custody instead of supervised release under 18 U.S.C. § 3632(d)(4)(C) on the basis of the TAC IR or having allowed the TAC IR to have affected Petitioner's PATTERN score, as cognizable under § 3632(d)(4)(A)(ii). Like the RT IR 3549119, no

written findings have ever been delivered to Petitioner for the TAC IR 3552752 despite his vigorous remedy filings seeking such.

79.  After the events recited in ERJ Decl., *Lammer*, dkt. 100, Petitioner received two central-office rejections of TAC IR 3552752 BP-10 III.  *See* TAC IR 3552752 BP-10 III As Rej. (Sept. 7, 2022), Exh. 23.  Petitioner immediately confirmed he had in fact mailed TAC IR 3552752 BP-10 III . to the North Central regional office, and not to the central office.  *See* TAC IR 3552752 BP-10 III Proof of Mailing, *Lammer*, dkt. 100-81 at 3 (mailed to regional office in Kansas City, KS).

80.  Petitioner inquired at the institution but no staffer was able to provide any insight as to how a remedy filing mailed to the regional office could have arrived and been rejected at the central office.  A review of Petitioner's records showed that he had mailed no other remedy to the central office ca. the same time such that would have made human error on his part plausible.

81.  For a while, Petitioner and his case manager were developing a procedure *ad hoc* to handle remedy rejections for absence of non-existent DHO reports that were plaguing Petitioner's remedy filings.  When Petitioner and his case manager were on the same page as to how to proceed, Petitioner prepared TAC IR 3552752 BP-10 IV (Nov. 5, 2022), Exh. 24.

82.  In the month since Petitioner turned over care, custody and control of TAC IR 3552752 BP-10 IV for mailing the BOP has not acknowledged its receipt of the remedy.  Having mishandled Petitioner's relevant remedy filings for seven months, until long past Petitioner's rightful release date, Respondent should not be heard to complain about exhaustion.  The balance of equities tips strongly in Petitioner's favor given his rigorous attempts to exhaust and Respondent's failures to follow his own policies on DHO appeals, timely handle remedy filings and produce DHO reports.

## VIII.  Respondent must credit Petitioner for his overserved time.

83.  Respondent cannot truly repair a single day that Petitioner has wrongfully spent in prison. But he should at least credit those 82 days and counting towards Petitioner's supervised release. This approach is consistent with habeas practice and BOP's own procedures for overserved time.

## IX.  Further exhaustion should be excused.

84.  In similar circumstances courts have excused petitioners who have wholly failed to make any efforts to exhaust or whose efforts were nowhere near as vigorous as this Petitioner's. *See,*

*e.g.*, *Pillow v. Bureau of Prisons*, 2022 U.S. Dist. LEXIS 192489, No. 4:22-cv-713 PSH (E.D. Ark. Oct. 21, 2022) (petitioner excused without trying to exhaust as to withheld FSA credits when his release date was "approximately two weeks away," because "[i]t would be futile to require him to exhaust at this late date") (collecting cases); *Hines v. Crabtree*, 935 F. Supp. 1104 (D. Or. 1996) (excusing exhaustion for RDAP credit, ordering immediate release under § 2241). In contrast, Petitioner's efforts to exhaust span months and hundreds of pages. *See, e.g.*, ERJ Decl., *Lammer*, dkt. 100 (62-page declaration with 263-page appendix showing efforts to exhaust and detailing the obstacles Respondent erected in opposition thereto).

85.  If the Court is left with any doubts as to Petitioner's efforts to exhaust or Respondent's affirmative misconduct then Petitioner requests a *Pavey* hearing.

### X. This petition is verified.

I verify that the foregoing is true and correct under penalty of perjury under the laws of The United States of America.  28 U.S.C. § 1746.  Executed Mon., Dec. 5, 2022,

by:

Martin Gottesfeld, *pro se*
Reg. no. 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808