UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

MARTIN GOTTESFELD, Petitioner,
*pro se*,

v.

T. RULE, Warden of The
Federal Correctional Institution,
Terre Haute, Indiana,
Respondent.

No. _____.

## SUPPLEMENTAL PETITION FOR A WRIT OF HABEAS CORPUS (§ 2241)

86.  MARTIN GOTTESFELD, Petitioner, *pro se*, hereby supplements the instant Petition for a Writ of Habeas Corpus (28 U.S.C. § 2241) ("Petition"), dkt. no. unknown.

87.  Petitioner executed Petition Mon., Dec. 5, 2022. *See* Petition at 21, § X ("Executed Mon., Dec. 5, 2022").

88.  Petitioner at his next opportunity thereafter, on Tue., Dec. 6, 2022, turned over care, custody and control of Petition to agent of Respondent Ms. Jamie Wheeler for mailing to the Court.

89.  The next day, Wed., Dec. 7, 2022, agent of Respondent Case Manager Ms. Rebekka Eisele gave Petitioner an unsigned answer to his Dec. 2, 2022, request to CMU Marion Case Manager Mr. Nathan Simpkins: "The memo for remedy 1120386," i.e. for the TAC IR 3552752, "was written and sent out on 11-8 and the one for remedy 1120431," i.e. for the Court-access IR 3338082, "was written and sent on 10-5." Inmate Request to Staff Re Remedies As Ans. (Dec. 7, 2022), Exh. 25.

90.  Petitioner asked Eisele to confirm that the unsigned response came verbatim from Simpkins and Eisele confirmed that it had in fact come from Simpkins.

91.  Petitioner takes Simpkins's response to mean that as of Nov. 8, 2022, no DHO report existed for the TAC IR. As already mentioned, Petitioner and Simpkins had developed a procedure *ad hoc* to address regional-office denials of DHO appeals for the purported failure to include the relevant DHO report, but for which no relevant DHO report existed. *See* Petition at 20, ¶ 31 (alluding to the *ad hoc* procedure). Under this procedure, Simpkins was to prepare a memo. to regional explain-

ing that no such DHO report exists or was delivered to Petitioner. Simpkins's answer to Petitioner's Request to Staff indicates he wrote and mailed just such a memo. re the TAC IR on Nov. 8, 2022.

92.  Also on Wed., Dec. 7, 2022, Petitioner confirmed with Wheeler, directly under a camera and microphone, just outside the FCI Terre Haute D-unit law library, that the Petition had, in Wheeler's words: "went out yesterday." *See* Inmate Request to Staff re Presevation of Audio and Video, Exh. 26.

93.  That Petition had "went out yesterday," as Wheeler confirmed, meant that Respondent had read Petition for contents on Tue., Dec. 6, 2022. *See* U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement 5214.02 Communications Management Unit (Apr. 1, 2015) ("CMU P.S.") at ch. 5(c)(1) ("Incoming and outgoing written general correspondence is ordinarily reviewed by CTU staff before delivery to the inmate or further processing to the post office") (citing 28 C.F.R. § 540.203 (mail to U.S. courts and judges is treated as general correspondence and read for contents)).

94.  Petitioner was then less than surprised the morning of Thu., Dec. 8, 2022, when agent of Respondent Case Manager Ms. Rebekka Eisele delivered to him the two overdue DHO reports in controversy, for the RT IR 3549119 and the TAC IR 3552752. The DHO reports had remained missing a full year after the relevant hearings and despite numerous remedies. *See, e.g.*, Petition at 17—20, §§ VI—VII (discussing the DHO reports and efforts to get them via administrative remedies). Petitioner notes, of course, that the reports were turned over only *after* he filed Petition with this Court seeking relief from the deprivation of earned good-conduct-time (GCT) without written findings and Respondent read that Petition. *See Houston v. Lack*, 487 U.S. 266, 275—76 (1988) (prisoner's *pro se* pleading is "filed" when he turns it over to prison authorities for mailing).

95.  Petitioner also notes:

> The CMU program stakes its supposed legitimacy on holding prisoners from gen. pop. based on their discipline histories. Prisoners with guilty findings for IRs cannot generally leave until they are discipline-free *for a year or more*. In practice—and in my case in particular, as well as other politically sensitive cases—new IRs are filed as older ones age out or are expunged, such that when prisoners' designations are reviewed they each have at least one IR, often frivolously unconstitutional, that is too recent to have exhausted and taken to court. By the time each could dispose of his current disciplinary

obstacle, Respondent *et al.* have concocted a new one and, *e.g.*, withheld the DHO report or rejected legitimate remedies.

Petition at 19, ¶ 76 (quoting Declaration of Martin Gottesfeld re *Exhaustion, Retaliation & Justiciability* ("ERJ Decl.") at 18, ¶ 142 (relevant emphasis added), *Gottesfeld v. Lammer*, 2:20-cv-12-JRS-MJD (S.D. Ind.) (*Lammer*), dkt. 100).

96.   Instead of delaying more than a year after the relevant discipline hearings, Respondent's own policy prescribes: "The DHO gives the inmate a written copy of the decisions and disposition, ordinarily within 15 work days of the decision." U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement 5270.09 Inmate Discipline Program (July 8, 2011) ("Inm. Disc. P.S.") at ch. 5 (citing 28 C.F.R. § 541.8(h)).

97.   When Eisele delivered the DHO reports to Petitioner she was sure to tell him: "You have 20 days to appeal those."

98.   Petitioner, however, does not stipulate that Respondent's untimely delivery of the DHO reports—only after Respondent had read Petition—obligates Petitioner to begin the remedy process anew prior to seeking judicial review, especially months after his rightful release date.

99.   Petitioner has still received no response to his Bradley BP-11 Re RT IR 3549119, Petition, Exh. 21. That response remains overdue. *See* Bradley BP-11 Re RT IR 3549119 Rem. Ack. & Ntc. of Ext. (Oct. 21, 2022) (response has been due since Oct. 24, 2022), Petition, Exh. 22. All issues pleaded in the BP-11 remain exhausted: "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement 1330.18 Administrative Remedy Program (Jan. 6, 2014) ("ARP P.S.") at ch. 12 (quoting 28 C.F.R. § 542.18). Pleaded issues include "Bradley, the DHO, retaliates against my PREA reporting of Mr. Royer, Bradley's friend and fellow DHO." Bradley BP-11 Re RT IR 3549119, Petition, Exh. 21. "I was denied witnesses, *e.g.*, Ms. Jodi Wampler, exculpatory evidence, *e.g.*, a copy of the call audio to challenge the transcription, and an impartial decisionmaker, i.e. not Royer's fellow DHO Buddy." *Id.* (citing *Jordan v. Scruggs*, 485 F.3d 934, 939 (7th Cir. 2007) (listing due-process requirements for prison-disciplinary proceedings)). "My calls are not subject to my securing assurances not to be quoted to the press, esp. regarding flagrant violations by the Bureau of Prisons communications-

management unit (CMU) staffers of the Prison Rape Elimination Act (PREA)." Bradley BP-11 Re RT IR 3549119 Cont. Pg., Petition, Exh. 21 at 2. The retaliatory nature of the RT IR 3549119 is especially obvious upon contrast to the charged prohibited-act code: "Use of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act." Imm. Disc. P.S. at Table 1 (quoting 28 C.F.R. § 541.3 at code 297). Neither the IR nor anything else provides a scintilla of evidence that staff were unable to monitor Petitioner's "frequency of telephone use, content of [his] call, or the number called" and talking to and being quoted by the press is not "a High category prohibited act" or an act in furtherance thereof. Cf. id. at Prohibited Act Codes 200–99. Respondent's belated delivery of the DHO report did not magically unexhaust this issue.

100. Through this Supplemental Petition, Petitioner requests that the Court order Respondent to return Petitioner's earned good-conduct-time (GCT) on the bases pleaded in Bradley BP-11 Re RT IR 3549119 As Subm., Petition, Exh. 21: 1) the report was retaliatory, without a scintilla of evidence to support Petitioner's violation of the charged prohibited-act code 297; 2) Petitioner was denied Ms. Jodi Wampler as a witness without sufficient reason; 3) Petitioner was denied exculpatory evidence without sufficient reason, e.g., the call audio to challenge the transcription; and 4) Petitioner was denied an impartial decisionmaker who would actually compare the charged conduct to the prohibited-act code and note the obvious inapplicability of the latter to the former. In the alternative, Petitioner requests that the Court order Respondent to return Petitioner's GCT on the basis that prohibited-act code 297 is unconstitutionally vague as applied as a restraint on Petitioner's protected speech. See Amended Reply in Support of Petition at 8–10, Lammer, dkt. 101 (Petitioner has exhausted as to vague restraints on his protected speech) (citing Ex Post Facto BP-11 As Subm. Key. Pg., Lammer, dkt. 100-49 at 1; Ex Post Facto BP-11 Cent. Office's Resp., Lammer, dkt. 100-59 at 2). Cf., also, id. at 17–19 (analyzing Respondent's prohibited-act code 204 for vagueness as applied to the Court-access IR 3338082) (citing Grayned v. City of Rockford, 408 U.S. 104, 108, 109 (1972)). Last, Petitioner asks the Court to order Respondent to return Petitioner's GCT on the basis that the withholding of the DHO report for a full year, until months

past Petitioner's rightful release date, is a constructive denial of Petitioner's right to procedural due process. *See* Petition at 18–19, ¶ 75 (citing *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 526 (7th Cir. 1996) (Posner, J.) (unjustifiable delays are constructive denials, "Otherwise the lower court or agency would have the judicial or administrative equivalent of a pocket veto")). Otherwise, Petitioner could reasonably expect to complete exhaustion anew ca. Nov. 2023, after his halfway-house-slash-home-confinement date as Respondent calculated it prior to the filing of this action. *See, e.g.*, ERJ Decl. at 42–52, ¶¶ 315–75 (Royer Sex-abuse BP-10 and -11 took over 11 months for Respondent to answer, from July 7, 2020, through June 21, 2021).

101. Likewise, Simpkins confirmed the mailing of Petitioner's Bradley BP-10 Re TAC IR 3552752 IV. *Supra*, ¶ 89 (citing Inmate Request to Staff Re Remedies As Ans. (Dec. 7, 2022), Exh. 25). But Petitioner is yet to receive any acknowledgement of the remedy from Respondent, let alone an answer. Petitioner began the remedy process for the TAC IR on Apr. 29, 2022—after having not received the DHO report for nearly five months—and he, through no fault of his own, is no closer to its end. *See, e.g.*, ERJ Decl. at 56, ¶ 404, *Lanmer*, dkt. 100 (citing Bradley BP-10 Re TAC IR 3552752 As Subm. (Apr. 29, 2022), *Lanmer*, dkt. 100-69). Petitioner asserts that Respondent cannot rightfully avoid exhaustion by ignoring and illegitimately rejecting timely and adequate remedy filings. To hold otherwise is to make a mockery of the remedy process and turn it into an administrative and judicial pocket veto.

102. Under any reasonable construction of the law and facts Petitioner has exhausted or is excused from exhausting the issues pleaded in his unacknowledged, unanswered relevant remedy, the mailing of which has now been confirmed by Respondent's own agent, to wit: 1) "DHO Bradley is Royer's fellow DHO and openly retaliated against my PREA reporting of Royer at the DHO hearing itself, thus violating both PREA and U.S. Const. amend. I, as well as 28 C.F.R. § 541.7(b)"; 2) "I was denied witnesses, *e.g.*, Jodi Wampler"; 3) Petitioner was also denied "evidence, *e.g.*, the call audio and transcription, in order to challenge the transcription, and surveillance audio of S.I.S. Ms. Jamie Wheeler's telling me that I may read the same statement from the call out loud in the unit"; 4) Petitioner was denied "an impartial decisionmaker not friends and fellow DHO with Royer, as well as separation from Royer under PREA"; 5) "I was denied adequate notice of the charge, code 397,

which Bradley adopted *sua sponte* during the hearing minutes before his decision"; and 6) actual innocence, i.e. "The call in question in IR 3552752 posed no articulable threat to safety or orderly operations; none was ever presented; it was a call to a journalist, Mr. Arthur 'Jordan' Bloom of *The American Conservative.*" Bradley BP-10 Re TAC IR 3552752 IV As Subm. (Nov. 5, 2022), Petition, Exh. 24.

103. Through this Supplemental Petition, Petitioner asks the Court to disqualify Respondent from using the TAC IR 3552752 to in any way lengthen Petitioner's confinement, due to the six aforecited due-process violations. Alternatively, Petitioner requests that the Court disqualify Respondent from using the TAC IR 3552752 to lengthen his confinement because prohibited-act code 397 is unconstitutionally vague as applied as a restraint on Petitioner's protected speech: "Use of the telephone for abuses other than illegal activity which do not circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a Moderate category prohibited act." Inm. Disc. P.S. at Table 1 (quoting 28 C.F.R. § 541.3 at code 397). Last, Petitioner asks the Court to disqualify Respondent from using the TAC IR 3552752 to lengthen Petitioner's confinement because withholding the DHO report for a full year, until months past Petitioner's rightful release date, is a constructive denial of Petitioner's right to procedural due process. *See, again, supra,* ¶ 100 (discussing vagueness and constructive denials) (citing remedy, remedy response and *Grayned,* 408 U.S. 108, 109).

104. Moreover, the plain fact that Petitioner had to file this action and Respondent only provided the DHO reports *thereafter,* upon his screening the instant Petition prior to mailing it to the Court, reinforces Petitioner's assertions that remedies were unavailable *up through and until after* his filing of htis action, and that Respondent is properly estopped from raising nonexhaustion as an affirmative defense.

105. Petitioner maintains that providing the DHO reports now, more than a year after the DHO hearings and after Petitioner's numerous remedy filings and postage and other expenses, only theoretically to force Petitioner to begin to exhaust anew at the BP-10 level months after his rightful release date would be fundamentally inequitable. "[F]ederal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing in-

stitutional interests favoring exhaustion." *McCarthy v. Madigan,* 503 U.S. 140, 146 (1992) (excusing federal prisoners from common-law exhaustion of *Bivens* claims). "Administrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *Id.* (quoting *West v. Bergland,* 611 F.2d 710, 715 (8th Cir. 1979), *cert. denied,* 449 U.S. 821 (1980) (internal quotation and alteration marks omitted)).

106. Should the Court harbor any doubts as to Petitioner's exhaustion or the unavailability of remedies as of Petitioner's opening of this case on Mon., Dec. 5, 2022, Petitioner renews his motion for a hearing. *See Pavey v. Conley,* 544 F.3d 739, 742 (7th Cir. 2008) (district judges to conduct hearings and allow relevant discovery to resolve contested exhaustion defenses).

107. Nonetheless, upon Eisele's advisory to Petitioner: "You have 20 days to appeal" the DHO reports, *supra,* ¶ 97, Petitioner acted conservatively to ensure preservation of his rights. He timely appealed each DHO report administratively. *See* Bradley BP-10 Re RT IR 3549119 II As Subm. Dedupl. (Dec. 8, 2022), Exh. 27; Bradley BP-10 Re TAC IR 3552752 V As Subm. Dedupl. (Dec. 8, 2022), Exh. 28.

108. Petitioner notes that the DHO reports are entirely boilerplate; there was no justification to delay their deliveries to Petitioner for over a year. *See RT* IR 3549119 DHO Rep., Exh. 27 at 3; TAC IR 3552752 DHO Rep., Exh. 28 at 3.

109. Petitioner further notes that though Eisele accurately annotated the time and date of her deliveries of the DHO reports to Petitioner, Bradley claims to have completed the reports on Sept. 28, 2022. *Id.*

110. Petitioner moves for discovery of Simpkins's remedy memo. for Bradley BP-10 re TAC IR 3552752 IV, as it likely indicates that Bradley falsified the date on the corresponding DHO report. *See, supra,* ¶ 91 (DHO report likely did not exist when Simpkins wrote his memo. on Nov. 8, 2022). *See also* ERJ Decl. at ¶¶ 107, 194–96 (Bradley falsified DHO report and suppressed evidence), 226–27 (Bradley retaliated against Officer Mr. S. Harvey, who documented the falsification of the DHO report, and Bradley and Harvey now have a separation order), *Lanmen,* dkt. 100.

111. Bradley's falsifications of the DHO-report dates is material because they are not his only falsifications in those reports. Bradley falsely claimed in both reports that Petitioner had waived witnesses. See RT IR 3549119 DHO Rep. at 1, § III(C)(1), Exh. 27 at 3; TAC IR 3552752 DHO Rep. at 1, § III(C)(1), Exh. 28 at 3. In fact Petitioner had requested Ms. Jodi Wampler, author of the RT IR 3549119, to testify as to her ability to monitor 1) Petitioner's frequency of phone use, 2) the content of Petitioner's call, and 3) the number called, as well as the untimeliness of the IR and other issues detailed in Petitioner's discipline-hearing statement. See U.S. Dep't of Justice, Fed. Bureau of Prisons, Form BP-A0294 Notice of Discipline Hearing Before the (DHO) (electing Jodi Wampler to testify), Exh. 27 at 6; Discipline-hearing Statement of Martin Gottesfeld (Petitioner also wanted to directly examine Wampler as to her mandatory PREA training, her knowledge of the operative prohibition against her retaliating against Petitioner for his reporting of then-CMU Terre Haute Unit Manager Mr. Todd Royer's sexual abuse and her knowledge that Mrs. Gottesfeld edited his work for RT, and, thus, no third party was necessary for the article in question to have been published), Exh. 27 at 7-9. Petitioner signed no waiver and never uttered an oral waiver; no such written waiver or recording can exist.

112. Neither did Petitioner sign or utter a waiver of his right to call Wheeler to testify to the innocuous nature of his statement on his call with Bloom and her authorization for his reading of the same statement from the call aloud in the CMU itself. No such written waiver or recording can exist. Indeed, Jasper "Jay" Knabb's relevant conduct is a matter of public record, available to every CMU prisoner in Respondent's own law library. See United States v. Coviello, 225 F.3d 54, 60 (1st Cir. 2000) (Knabb cooperated in FBI sting operation that netted criminal convictions on multiple defendants); United States v. Knabb, 2020 U.S. Dist. LEXIS 173885, No. 11-cr-9-JSW-2 (N.D. Cal. Sept. 21, 2020) (the government moved to reduce Knabb's sentence, court granted a one-year reduction in separate, sealed order).

113. Bradley produced no valid reason to withhold Petitioner's witnesses. See RT IR 3549119 DHO Rep. at 1, § III(C)(3), Exh. 27 at 3; TAC IR 3552752 DHO Rep. at 1, § III(C)(3), Exh. 28 at 3.

114. Petitioner objects to any construal of his administrative appeals of the newly provided DHO reports as stipulation or assent that the issues pleaded in his earlier remedies are in any way

unexhausted, or that remedies were available to Petitioner when he filed the instant Petition.

115. "The writ, or order to show cause shall be directed to the person having custody of the person detained. It shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed." 28 U.S.C. § 2243. Petitioner objects to any deadline exceeding three days in which for Respondent to show cause as to why the Petition should not be granted.

116. The Petition has reached the Court but has not been docketed. *See* USPS Tracking Info for no. 9114 9022 0078 9988 6601 53. Petitioner shall turn over care, custody and control of this Supplemental Petition to Respondent on Mon. Dec. 12, 2022, in an envelope bearing sufficient affixed USPS Priority Mail flat-rate postage and tracking no. 9114 9022 0078 9988 6602 90, for mailing to the Court. At that time Respondent will read this Supplemental Petition and know of Petitioner's objections, *supra,* ¶¶ 114–15. *See, again, supra,* ¶ 93 (Respondent pre-emptively reads Petitioner's court filings before mailing) (citations omitted). *Cf.* S.D. Ind. L.R. 6-1(c)(4) (parties obliged to state opposing party or parties stance or stances on motions ~~to object,~~ for extensions, in cases wherein all parties are represented).

I verify that the foregoing is true and correct under the penalty of perjury under the laws of The United States of America. 28 U.S.C. §§ 1746, 2242. Executed Sun., Dec. 11, 2022,

by: _____
   Martin Gottesfeld, *pro se*
   Reg. no. 12982–104
   Federal Correctional Institution
   P.O. Box 33
   Terre Haute, IN 47808

12xh, 25

BP-A0148
JUNE 10                    INMATE REQUEST TO STAFF CDFRM

U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) SIMPKINS, MR. NATHAN—U.S.P. MARION I-UNIT CASE MGR. | DATE: 02 DEC. 2022 (FRI.) |
|---|---|
| FROM: GOTTESFELD, MARTIN S. | REGISTER NO.: 12982-104 |
| WORK ASSIGNMENT:      N/A | UNIT: FCI-THA D-UNIT |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.

Salutations Mr. Simpkins—I hope you are well.  I again thank you for helping me resolve IR 3427792.  In re-
viewing my records I see that my second resubmission of rem. no. 1120386-R2 seeking expungement of IR 3552752
has not been acknowledged by regional.  I accurately dated the BP-10 and envelope Saturday, November 5, 2022,
and turned it over for mailing at mail call Monday, November 7[?], 2022.  Going back a bit further, my BP-11 ap-
pealing the rejection of rem. no. 1120431-R3 to expunge IR 3338082 is also unacknowledged.  I dated it Fri-
day, September 30, 2022, and turned it over for mailing at my next opportunity.  Will you please advise me if
your records reflect that you wrote the relevant memoranda for those remedies and that they were in fact
cleared through CTU and mailed?

Thanks, by:

                              (Do not write below this line)

DISPOSITION:

The memo for remedy 1120386 was written and sent out on 11-8 and the one for remedy 1120431 was written
and sent on 10-5.

Rec'ed unsigned response 2022-12-7, but Beale confirmed response
was straight from Simpkins,

                    by

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate

PDF                              Prescribed by P5511

                              This form replaces BP-148.070 dated Oct 86
                              and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER          SECTION 6

Exh. 26

```
To Wheeler, Ms. Jamie—interim-IRO, D-unit; S.I.S.
From Gottesfeld, Martin, Reg. no. 12982-104, D-40
1403 hrs. Friday, December 9, 2022
Re Preservation of audio & video; Gottesfeld v. Rule (S.D. Ind.)
```

Salutations Ms. Wheeler & S.I.S.:

I hope you are well.

I write to request the preservation against spoliation or other loss of the audio and video footage of my conversation with Ms. Wheeler the afternoon of Wednesday, December 7, 2022, outside the D-unit law library, in which I asked Ms. Wheeler as to the status of the court mailing I had given to her the previous day and she told me it "went out yesterday."

I request the aforesaid evidence for admission into the case *Gottesfeld v. Rule*, No. unknown (S.D. Ind.). In support of this request I note the Court's Order: "the duty to preserve evidence arises whenever a party knows, or should know, that litigation is imminent." *Gottesfeld v. Lammer*, 2:20-cv-12-JRS-MJD (S.D. Ind. Jan. 16, 2020), dkt. 9 at 1, § I.(citing *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008)). "The petitioner included with his petition a copy of his timely request to prison officials that they preserve video [and audio] evidence in anticipation of litigation." *Id.* (citation omitted). "No other order is necessary." *Id.*

Pursuant to the same order and case, I also request the preservation against spoliation or other loss of the video evidence recorded ca. 0915 hrs. today, Friday, December 9, 2022, of myself in the D-unit law library, demonstrating for the camera each of the pages placed into each of my envelopes of relevant remedy filings, and the continuous footage from the cameras in D-unit showing my walk directly from the law library, envelopes in hand and never disturbed, to the chow hall, where I then asked Ms. Eisele—this part to include the relevant audio—for timeliness memos. on the basis that regional may choose to disbelieve the delivery dates on the DHO reports, and Eisele's assurance that the delivery dates are accurate, to include my response thereto to the effect that I agreed but nonetheless was still requesting her to write the timeliness memos, having turned over the envelopes for mailing.

If for any reason the above evidence may not be available for admission to the Court, please inform me as soon as practical, in writing.

Thank you for your prompt attention to this time-sensitive matter,

by:

Martin Gottesfeld

- PAGE 1 OF 1 -

**U.S. Department of Justice**                                    **Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: GOTTESFELD, MARTIN S.          12982-104          D          FCI-THA
     LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A—REASON FOR APPEAL** This is an appeal of the guilty finding for incident report (IR) 3549119, "Offense Code: 297," "DHO Hearing" by Mr. Jason Bradley on "12-01-2021." *See* DHO Rep., Attachm. 1. The "delivered to Inmate" date of 12-08-22, *id.* at 3, § IX, is accurate and this appeal is timely and properly filed. *See* incl'd Timel. Memo.; Prog. Stat. 1330.18 Administrative Remedy Program (Jan. 6, 2014) ("PS ARP") at chs. 8 (citing 28 C.F.R. § 542.14(d)(2) (DHO appeals are properly filed "initially to the Regional Director for the region where the inmate is currently located")), 9 (citing 28 C.F.R. § 542.15(a) (20-day time to file a reg. appeal)).

The decision cannot stand because, *e.g.*, I was denied a dispositive witness, Ms. Jodi Wampler, i.e. the complainant. *See* U.S. Dep't of Justice, Fed. Bureau of Prisons, Notice of Discipline Hearing Before the (DHO), 09/22/2021, electing to call Wampler, Attachm. 2. Absent Wampler I could not challenge, *e.g.*, the untimeliness of the IR, the accuracy of the call transcript, the retaliatory nature of the IR or the simple fact that Wampler 1) knew "my frequency of phone use, 2) that she knew the contents of my call, and 3) that she knew the number called." Disciplinary-hearing statement of Martin S. Gottesfeld ("Inm. Stat.") at 1-3 (enumerating key questions for Wampler) (citing, *inter alia*, Prog. Stat. 5270.09 Inmate Disciplinary Program (July 8, 2011) ("PS Disc. Prog.") at Table 1, code 297 ("Use of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor the frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act")), Attachm. 3.

Bradley falsified his DHO report—as he tends to do—to claim "Inmate waived right to witness." DHO Rep. § III(C)(1), Attachm. 1 at 1. But I never waived witnesses and no signed documentation exists to that effect. *Contrast* Inm. Stat. (enumerating questions I intended to ask Wampler). *PLEASE SEE CONT. PG., INCL'D →*

  08 DEC. 2022 <- THE SAME DAY I REC'VED THE DHO REPORT.          _____
          DATE          SIGNATURE OF REQUESTER

**Part B—RESPONSE**

 

 

_____          _____
        DATE          REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE          CASE NUMBER: _____

**Part C—RECEIPT**

                       CASE NUMBER: _____

Return to: _____
     LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

REGIONAL ADMINISTRATIVE REMEDY APPEAL OF IR 3549119 CONT. PG. 1 OF 1

GOTTESFELD, MARTIN S.        REG. NO. 12982-104                    D-UNIT     FCI-THA

And "[t]he IR neither alleges nor provides any evidence I 'commit[ted] or further[ed] a High category prohibited act.'" Inm. Stat. at 1, Attachm. 3 at 1 (quoting code 297) (alterations in Inm. Stat.) (comparing code 299 ("... The offending conduct must be charged as 'most like' one of the listed High severity prohibited acts")).

The decision also cannot stand because the IR was untimely and no warden's memo. excuses the delay. The call in question occurred 9/16/21. *See* IR § 4 ("Date of Incident: September 16, 2021"), Inm. Stat., Attachm. 3, Exh. 1. The call was "live-monitored by CTU staff." Prog Stat. 5214.02 Communications Management Unit (Apr. 1, 2015) at ch. 2(a) (citing 28 C.F.R. § 540.204(a)). Wampler was the "CTU staff" who live-monitored that call on 9/16/21. The relevant article was published "September 18, 2021, at approximately 1:12 p.m." IR § 11. Wampler then did not sign the IR for a further 46½ hours. *Id.* §§ 12–13 ("09/20/21 11:50 AM"). Another seven hours passed before the IR was delivered to me. *Id.* §§ 14–16 ("9/20/21" "1853 HR."). A total of 97 hours passed between the call and the delivery of the IR. *See id.* § 11 (call was "on September 16, 2020, at approximately 5:20 p.m.").

This delay also shows that Wampler, Bradley, *et al.* had no problems with the call or its contents, but with the media response more than 24 hours later—after which they still did not deliver the IR to me for a further 53½ hours. Thus the IR is not only untimely but retaliatory, and must be expunged for this other reason too. *See* Inm. Stat., Attachm. 3 (inmates may call news media, no limits on telephone use to call media, and BOP clearly knew my frequency of phone use, the content of my call and the number called) (citing Prog. Stat. 5264.08 Inmate Telephone Regulations ("PS Inm. Tel. Reg.") at chs. 8, 8(f); Exh. 2). At the hearing Bradley openly took exception to my negative but true reports to the media about misconduct of named staffers.

The decision also cannot stand because my call was not circumventive. Complainant knew that my wife, the other party on the call, edits my work for *RT*, the outlet in question. No third party was involved in quoting me and Complainant cannot and did not provide any evidence showing such. Nor are my phone calls subject to my securing assurances not to be quoted to the press, esp. about violations of the Prison Rape Elimination Act (PREA) by CTU and Terre Haute BOP staffers. Inm. Stat. at 2 (Wampler knew Mrs. Gottesfeld edits my work for *RT* and that policy allows me to call journalists; Wampler protects Mr. Todd Royer from true reporting of his sexual abuse of inmates) (quoting IR § 17; citing 28 C.F.R. § 115.54 Third-party reporting).

Instead of harassing and retaliating against me, Wampler, Bradley, Eisele, Payton *et al.* were required to separate Royer from me and his other victims. Inm. Stat. at 2–3 (discussing Royer's unwanted sexual advance and voyeurism) (quoting 28 C.F.R. § 115.64(a) ("Upon learning of an allegation that an inmate was sexually abused, the first security staff member to respond to the report shall be required to: (1) Separate the alleged victim and abuser"), § 115.67(c) ("For at least 90 days following a report of sexual abuse, the agency shall monitor the conduct and treatment of inmates or staff who reported sexual abuse and of inmates who were reported to have suffered sexual abuse to see if there are any changes that may suggest possible retaliation by inmates or staff")). In the Bureau all staff are "security staff" under 28 C.F.R. Part 115.

Now the DHO report is itself so late as to violate due process. My release date rapidly approaches. *See* Petition, *Gottesfeld* v. *Rule,* No. TBD (S.D. Ind. 2022) (arguing for immediate release through § 3621(e), FSA, and GCT). The hearing was over a year before I received the DHO Rep. I was supposed to receive the DHO report within 15 work days. I only received it now because I filed in court about Bradley depriving me of it. *Id.* Withholding the report for over a year, as inarguably happened, was a constructive denial of my right to written findings that prevented me from exhausting in time and making it to the Court. For this reason too the IR must be expunged.

by: _MARTIN GOTTESFELD_                                        08 DEC. 2022 (THU.)

BP-A0304
JAN 17

# DISCIPLINE HEARING OFFICER REPORT

**U.S. DEPARTMENT OF JUSTICE**                    *FEDERAL BUREAU PRISONS*

| | |
|---|---|
| Institution: **FCC Terre Haute** | Incident Report number: **3549119** |
| NAME OF INMATE: **GOTTESFIELD, Martin** | REG. NO.: **12982-104**   UNIT: **CMU** |
| Date of Incident Report: **09-20-2021** | Offense Code: **297** |
| Date of Incident: **09-16-2021** | |

Summary of Charges: **Phone Abuse**

## I.   NOTICE OF CHARGE(S)

A. Advanced written notice of charge (copy of Incident Report) was given to inmate on (date) **09-20-2021** at (time) **1300** (by staff member) **McPherson.**

B. The DHO Hearing was held on (date) **12-01-2021** at (time) **1300.**

C. The inmate was advised of the rights before the DHO by (staff member): **Eisle** on (date) **09-22-2021** and copy of the advisement of rights form is attached.

## II.   STAFF REPRESENTATIVE

A. Inmate waived right to staff representative.  Yes _____   No **X**.

B. Inmate requested staff representative and _____ appeared.

C. Staff Representative statement: **I met with the inmate prior to the hearing. I reviewed the incident report packet which appears to be complete.**

D. Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that: (New Staff Representative Name) **S. Harvey** was selected.

E. Staff representative **A. Payton** was appointed.

## III.   PRESENTATION OF EVIDENCE

A. Inmate _____(admits) **X** (denies) _____(neither) the charge(s).

B. Summary of inmate statement:
**I did not give an interview. I was just answering questions. This incident report is being written in retaliation.**

C. Witnesses:
1. Inmate waived right to witness. Yes **X** No _____

2. The following persons were called as witness at this hearing and appeared (Each witness name and statement listed below):

3. The following persons requested were not called for the reason(s) given (Each witness name and statement listed below):

4. Unavailable witnesses were requested to submit written statements and those statements received were considered (Each witness name and statement listed below).

D. Documentary Evidence: In addition to the Incident Report and Investigation, the DHO considered the following documents: **Recorded phone call, RT news article, telephone transcript, inmate's written statement.**

E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate.  The confidential information was documented in a separate report.  The confidential information has been (confidential informants have been) determined to be reliable because: _____.

## IV.   FINDINGS OF THE DHO

**X** A. The act was committed as charged.

_____ B. The following act was committed:
_____.

_____ C. No prohibited act was committed:
Expunge according to Inmate Discipline PS.

## V.   SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations,

BP-A0304
JAN 17

**DISCIPLINE HEARING OFFICER REPORT**

<u>U.S. DEPARTMENT OF JUSTICE</u>                                        <u>FEDERAL BUREAU PRISONS</u>

| Name of Inmate:<br>GOTTESFELD, Martin | Reg. No.:<br>12982-104 | Hearing Date:<br>12-01-2021 |
|---|---|---|

written documents, etc.):

You were advised of your rights before the Discipline Hearing Officer and stated that you understood those rights. You requested a staff representative, and you were provided with one. A written statement was provided on your behalf.

Administrative notice is given to you request for the reporting officer as your witness. The DHO chose not to call the reporting officer to the hear as his statement is well documented in Section 11 of the incident report. In addition, the reporting would be considered an adverse witness.

The DHO finds that you committed the prohibited act of Code 297: Phone Abuse.

The DHO considered the Incident Report which the reporting officer states, An unnamed journalist published an article on the RT website (https://on.rt.com/bgyv) on September 18, 2021, at approximately 1:12 p.m. The article was titled, " The law doesn't apply in America anymore,' hacktivist Marty Gottesfeld tells RT from jail." A review of the published article revealed inmate Gottesfeld participated in a telephone media interview with the RT journalist. Specifically, the article stated, "...he tells RT, in an exclusive telephone interview from jail," "...Marty Gottesfeld tells RT," and "...the accused cyber attacker claims, adding..." A review of the inmate's communications revealed Gottesfeld made a call to Dana Gottesfeld, his wife, on September 16, 2020, at approximately 5:20 p.m. The review revealed the RT article was nearly verbatim to the communications in this call. At approximately two minutes in to the call, Dana mentioned she had a few questions that she would like to read to the inmate. The inmate gave his approval for her to read them. The first question she read annoyed the inmate and he stated, "I wonder if I want to be answering this series of questions or if someone should just go pound sand. Because that's the other option. I can just not answer at all, so...," which is a reflection of his acknowledgement of this being a 3rd party's question, not his wife's. Dana continued with reading the additional questions and the inmate answered each at length. Multiple times throughout the call, the inmate made comments to reflect his acknowledgment that the questions were from a 3rd party interviewer, one of which is notated above. Additionally, the inmate stated, "I've dealt with enough hostile people who don't want to do their homework" and "Yeah, tell him...(stutter and pause)...that's fine." (At this point, the inmate quickly changed their conversation to other subjects.) Further review of the article revealed it was filled with quotes purportedly made by the inmate, although, the communication review revealed he had in-fact only made these comments during the call to Dana. It has been determined inmate Gottesfeld and Dana, both, knowingly conspired to circumvent monitoring procedures by relaying interview questions and responses between the inmate and an unknown 3rd party.

The DHO made a review of your written statement and found no exculpatory information.

The DHO made a review of the telephone transcript/recorded phone call and the RT news article, which reaffirms that inmate relayed information to a third party.

The DHO considered your statement to the investigating Lieutenant stating, "this incident report was written as retaliation" "due to statements I made about PREA violations involving staff during the phone call."

The DHO considered your statement to the UDC stating, "I did not such interview. I have been provided neither a transcript of the call nor a recording of the call to challenge the accuracy of this report." Inmate further states in summary that the incident report was written in retaliation.

BP-A0304
JAN 17

**DISCIPLINE HEARING OFFICER REPORT**

**U.S. DEPARTMENT OF JUSTICE**                      **FEDERAL BUREAU PRISONS**

| Name of Inmate:<br>GOTTESFELD, Martin | Reg. No.:<br>12982-104 | Hearing Date:<br>12-01-2021 |
|---|---|---|

The DHO considered your statement to the DHO stating, I did not give an interview. I was just answering questions. This incident report is being written in retaliation.

The DHO considered your statement and denial to the charge against you but was not convinced. The DHO believes you would deny the charge to avoid possible disciplinary sanctions, if found guilty. You state the incident report was written due to retaliation. However, from a review of the recorded phone/transcripts and review of the RT new article it is very apparent that you conducted an interview with your approved contact. You did this with the purpose of forwarding the information to a third party. By doing this you circumvented staff's ability to effectively monitor your communications meeting the elements of the prohibited act. The DHO based the decision on the greater weight of the evidence. Greater weight is given to the incident report, telephone transcripts, recorded telephone call, and to the RT new article.

Therefore, based on the greater weight of the evidence the DHO finds you committed the prohibited act of Code 297: Phone Abuse.

---

**VI.    SANCTION OR ACTION TAKEN** (List each prohibited act with respective sanctions for that act):

Code 297:
27 Days Disallow Good Conduct Time
180 Days Loss of Phone
180 Days Loss of Email

---

**VII.   REASON FOR EACH SANCTION OR ACTION TAKEN:**

The action on the part of any inmate to use the telephone in an unauthorized manner poses a serious threat to the ability of staff to control the use of the telephone and monitor whether inmates are making calls for prohibited or illegal purposes.  It is indicative of the intent to participate in unauthorized activities that could lead to disruptive behavior.  The use of telephones is a privilege for inmates to maintain contact with their family and to maintain ties with them and not for criminal use.  The sanctions imposed by the DHO were taken to express the gravity of the infraction and let the inmate know that he, and he alone, will be held responsible for his actions at all times.

---

**VIII. APPEAL RIGHTS:**    **X**    The inmate has been advised of the findings, specific evidence relied on action and reasons for the action.  The inmate has been advised of the right to appeal this action within 20 calendar days under the Administrative Remedy Procedure.  A copy of this report has been given to the inmate.

**IX.    Discipline Hearing Officer**

| Printed Name<br><br>J. Bradley DHO | Signature<br><br>*(signature)* | Date<br><br>09-28-2022 |
|---|---|---|

DHO report delivered to Inmate by: _R. Eisele_

_R. Eisele_                  *(signature)*                  _12-08-22 / 0928hrs._
Printed Name (Staff)          Signature:                  Date and Time:

Prescribed by P5270                    Replaces BP-A0304 of AUG 11

3

Attachm. 2

BP-A0294      **Notice of Discipline Hearing Before the (DHO)** CDFRM
AUG 11
**U.S. DEPARTMENT OF JUSTICE**          **FEDERAL BUREAU OF PRISONS**

|  |  |
|---|---|
|  | THA |
|  | Institution |
|  | 09/22/2021 |
|  | Date |

| TO: Martin Gottesfeld | REG. NO.: 12982-104 |
|---|---|

ALLEGED VIOLATION(S): Phone Abuse - Disrupt Monitoring

| DATE OF OFFENSE: 09/16/2021 | CODE NO.: 297 |
|---|---|

You are being referred to the DHO for the above charge(s).

The hearing will be held on: _____ at _____ (A.M./P.M.) at the following location:
DHO Schedule _____

You are entitled to have a full-time staff member represent you at the hearing. Please indicate below whether you desire to have a staff representative, and if so, his or her name.

I (do) ✓ (do not) ____ wish to have a staff representative.

If so, the staff representative's name is: S. Harvey, CO

You will also have the right to call witnesses at the hearing and to present documentary evidence in your behalf; provided, calling your witnesses will not jeopardize institutional safety. Names of witnesses you wish to call should be listed below. Briefly state to what each proposed witness would be able to testify.

I (do) ✓ (do not) ____ wish to have witnesses.

| NAME: Jody Wampler | CAN TESTIFY TO: Phone call contents + explain untimeliness of IR. |
|---|---|

| NAME: | CAN TESTIFY TO: |
|---|---|

| NAME: | CAN TESTIFY TO: |
|---|---|

The Discipline Hearing Officer will call those witnesses (Staff or Inmate) who are reasonably available, and who are determined by the DHO to have information relevant to the charge(s). Repetitive witnesses and repetitive character references need not be called. Unavailable witnesses may be asked to submit written statements.

If additional space is needed, use the reverse side of this form. Date, sign, and return this form to the DHO.

| DATE: 09/22/2021 | SIGNATURE: |
|---|---|

Notice of hearing before DHO given inmate 09/22/2021/1411hrs by R. Eisele
                                             Date/Time                 Staff Printed Name/Signature

*(This form may be replicated via WP)*                          *Replaces BP-294(52) of JAN 88*

PDF                                     Prescribed by P5270

Attachm. 3

TRULINCS 12982104 - GOTTESFELD, MARTIN - Unit: THA-D-A

--------------------------------------------------------------------------------

FROM: 12982104
TO: Bloom, Jordan; Bolling, Eric; Brown, Benjamin; Camp, Frank; Daniel, Ted; Gosztola, Kevin; Green, Jeremy; Grim, Ryan; Kiriakou, John; Kushner, David; Malkin, Michelle; Mcbreen, Kelen; Newman, Alex; Pavlo, Walter; Shaw, Carey M; Sweeney, Chris; Tesoriero, Celeste; Trigg, Lisa; Volpe, Michael; Wright, Meredith
SUBJECT: 2021-09-23: Disciplinary hearing statement
DATE: 09/23/2021 07:37:08 PM

Hi Jordan, Eric, Attorney Brown, Frank, Ted, Kevin, Attorney Green, Ryan, John, David, Michelle, Kelen, Alex, Walter, Mitchell, Chris, Attorney Tesoriero, Lisa, Michael, and Meredith,

I hereby make the following disciplinary-hearing statement available under the latest Creative Commons by-attribution, derivatives-permitted, share-alike, commercial-use-permitted license.

From Little Guantanamo,
/s/ Martin S. Gottesfeld

Start Here
→ Disciplinary-hearing statement of Martin S. Gottesfeld

This statement corresponds to the **still-unnumbered** BP-A0288 INCIDENT REPORT issued by outside employee Jodi Wampler at 11:50 A.M. Sept. 20, 2021, for an incident allegedly discovered 9:00 A.M. 09/20/2021 involving a call two (2) days earlier September 18, 2021. See UNNUMBERED BP-A0288 INCIDENT REPORT of Jodi Wampler (hereinafter the "IR"), Exh. 1.

"Inmates may submit telephone numbers for any person they choose, including numbers for... members of the news media." BOP Program Statement 5264.08 Inmate Telephone Regulations (Jan. 24, 2008) at ch. 8 Procedures, Exh. 2. The relevant program statement says nothing about limiting media interviews. See id. at sec. f Limitations on Inmate Telephone Calls.

Instead the IR manifestly charges prohibited-act code 297: "Use of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor the frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act." 28 C.F.R. sec. 541.3 Prohibited acts and available sanctions, at code 297, Exh. 3. See also Program Statement 5270.09 Inmate Disciplinary Program (July 8, 2011) at Table 1, code 297 (same).

Nowhere does the IR allege---let alone provide a scintilla of evidence---that I "circumvent[ed] the ability of staff to monitor [(1)] frequency of telephone use, [(2)] content of the call, or [(3)] the number called," as required for my conduct to violate prohibited-act code 297. In contrast, "the disciplinary decision must be supported by at least 'some evidence.'" Scruggs v. Jordan, 485 F.3d 934, 941 (7th Cir. 2007), quoting Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985).

First, BOP knew and knows my frequency of phone use. The IR nowhere alleges I used cell phone or other unauthorized phone. I used the authorized BOP ITS phone system as per BOP policy. "Unless specifically restricted, inmates will be allowed two 15-minute monitored telephone calls per week. Calls may be placed Monday through Friday, except holidays, between 8:00 a.m. and 8:00 p.m. local time. On Sundays and holidays, telephone calls may be placed between 8:00 a.m. and 2:30 p.m., local time." Program Statement 5214.02 Communications Management Unit (Apr. 1, 2015) at ch. 5 CONDITIONS OF CONFINEMENT, sec. c Contact with Persons in the Community, subsec. (2) Telephone Communication Limits. I placed my pre-scheduled, pre-approved, weekly telephone call to my wife Mrs. Dana E. Gottesfeld at 5:20 P.M. local time Thursday, September 18, 2021, a non-holiday.

Second, BOP knew the content of the call as it purports to quote its contents in the incident report. See, again, the IR.

Third, BOP knew the number called. My call records will show multiple prior calls to the same pre-approved number for my wife, i.e. (310) 923-5880. The administrative block was put on her number only after the call in question. See 1) GOTTESFELD, MARTIN (12982104) TRULINCS Contact List - Phone (Sept. 23, 2021), Exh. 4 and 2) BP-A0740 REQUEST FOR INMATE PHONE RESTRICTION by Jodi Wampler (Sept. 20, 2021), Exh. 5.

If allowed to question Ms. Wampler, my first questions would confirm 1) that she knew my frequency of phone use, 2) that she knew the contents of my call, and 3) that she knew the number called.

The IR neither alleges nor provides any evidence I "commit[ted] or further[ed] a High category prohibited act," as required by prohibited-act code 297. Cf., e.g., 28 C.F.R. sec. 541.3, prohibited-act code 299 ("... The offending conduct must be charged as

TRULINCS  12982104 - GOTTESFELD, MARTIN - Unit: THA-D-A

--------------------------------------------------------------------------------------------------------

'most like' one of the listed High severity prohibited acts"), Exh. 6.

My wife is a member of the news media.  She has written for HuffPost and writes for RT.  Ms. Jodi Wampler, author of the incident report, was already aware that my wife writes for RT because my wife and I had discussed my wife's marking up of a manuscript for publication at RT on a previous phone call---a call for which no incident report was delivered.

If allowed to question Ms. Wampler, I would establish that she knew my wife to be a member of the news media who writes for RT and that BOP policy expressly allows me to to call journalists.

I cannot have violated prohibited-act code 297's actual terms, or committed any other prohibited act.

Further, other regulations that "CONTACT WITH THE NEWS MEDIA" inside BOP facilities are inapplicable, e.g. 28 C.F.R. secs. 540.60--63, marked-up, Exh. 7.  In contrast, media interviews not done in-person require no pre-approval.  Again, "Inmates may submit telephone numbers for any person they choose, including numbers for... members of the news media."
Program Statement 5264.08 Inmate Telephone Regulations, above.  See also 28 C.F.R. sec. 115.6 ("An inmate may prepare a manuscript for private use or for publication while in custody without staff approval" and "An inmate may mail a manuscript as general correspondence"), Exh. 8; McGowan v. United States, 825 F.3d 118, 122 (2d Cir. 2016) (noting the striking down of BOP's byline restriction as unconstitutional), citing Jordan v. Pugh, 504 F. Supp. 2d 1109, 1124 (D. Colo. 2007); and U.S. Const. amend. I.

Not only is the charged prohibited-act code clearly frivolous, but the IR is clearly retaliatory.  "I mentioned [Unit Manager] Royer's onging PREA violations on this call.  This incident report is the latest attempt to immunize Mr. Royer against PREA. I had calls just like this and no incident reports.  The distinguishing feature of this call was that it dealt with Mr. Royer and PREA. No PREA interviews have ever been conducted the way they were for Ms. Owens.  This is discriminatory."  The IR at sec. 17.

PREA protects third-party reporting of the type Ms. Wampler complains about: "The agency shall establish a method to receive third-party reports of sexual abuse and sexual harassment."  28 C.F.R. sec. 115.54 Third-party reporting.

If allowed to question Ms. Wampler, I would establish that she undergoes mandatory PREA training and is aware of the rules precluding retaliation against prisoners who report sexual abuse and the procedures re third-party sexual-abuse reporting.

After my first PREA complaint against Mr. Royer---of which Mr. Royer was well aware---Mr. Royer came into my cell unescorted, off-camera as a show of dominance.  I reasonably interpret the sum of his behavior that day as an unwanted sexual advance. Mr. Royer had previously opened my cell door and stared at me defecating.  Other prisoners report the same.  "Sexual abuse of an inmate... by a staff member... includes... [v]oyeurism by a staff member."  28 C.F.R. sec. 115.6 Definitions related to sexual abuse.  "Voyeurism by a staff member... means an invasion of privacy of an inmate... by staff for reasons unrelated to official duties, such as peering at an inmate who is using a toilet in his or her cell to perform bodily functions."  Id.

Mr. Royer also went off-camera, unescorted, into the prisoners' shower area and reached his hand into an occupied shower.  A report was filed then too.

"Upon learning of an allegation that an inmate was sexually abused, the first security staff member to respond to the report shall be required to: (1) Separate the alleged victim and abuser."  28 C.F.R. sec. 115.64(a) Staff First Responder Duties.  Mr. Royer has never been separated from me and his numerous other accusers in this unit.  I speak out and WHAM.

"Following an investigation into an inmate's allegaton that he or she suffered sexual abuse in an agency facility, the agency shall inform the inmate as to whether the allegation has been determined to be substantiated, unsubstantiated, or unfounded." 28 C.F.R. sec. 115.73(a) Reporting to inmates.  Neither I nor any of Mr. Royer's other accusers have ever heard back on any of our reports.  My oldest such report is from summer 2019---more than two (2) years ago.

"For at least 90 days following a report of sexual abuse, the agency shall monitor the conduct and treatment of inmates or staff who reported sexual abuse and of inmates who were reported to have suffered sexual abuse to staff to see if there are any changes that may suggest possible retaliation by inmates or staff."  28 C.F.R. sec. 115.67(c) Agency protection against retaliation.  Nobody has ever followed up with me or any of Mr. Royer's other accusers to hear how he, in fact, does retaliate against us.

Further showing retaliation, I never received the DHO report for the last retaliatory and otherwise-unconstitutional incident report Ms. Wampler filed against me.  This denies me due process.  See Scruggs, above, at 939 ("Due process requires that prisoners in disciplinary proceedings be given: '... a written statement by the fact-finder of the evidence relied on and the

TRULINCS  12982104 - GOTTESFELD, MARTIN - Unit: THA-D-A

--------------------------------------------------------------------------------------------------------------

reasons for disciplinary action," quoting Rasheed-Bey v. Duckworth, 969 F.2d 357, 361 (7th Cir. 1992)).  Now, with that report missing for over six (6) months and preventing me from appealing the sanctions I already served for my previous protected speech, BOP seeks to sanction me again for clearly protected conduct and under clearly frivolous cirumstances.  This is a malicious abuse of the prison-disciplinary system that calls into question the impartiality of any knowing participant therein.

And the leaving of the incident report as still-unnumbered after the unit disciplinary committee (UDC) casts a shade of illegitimacy upon these proceedings.  At best, the number of this incident report is withheld from me, or, perhaps it's not even been logged into the system, i.e. it's extrajudicial and extra-administrative.  I assert I am frequently prevented from knowing the number of the incident reports filed against me to interfere with my abilities to ascertain relevant information for litigation.

More shade is cast by the untimeliness of this report---following the untimeliness of its predecessors.  See, generally, Petition for a Writ of Habeas Corpus, Gottesfeld v. Lammer, 2:20-cv-00012-JRS-MJD, dkt. 1 (S.D. Ind.).  The call took place on September 18, 2021.  The contents of the call were known then; it was live monitored.  See 28 C.F.R. sec. 540.204.  Only after Mr. Royer's PREA violations became public was the report written untimely.

Due to the IR's retaliatory nature qualified immunity is unavailable to anyone imposing sanctions or attempting to maliciously abuse the prison-disciplinary process.  See, again, McGowan, above, Jordan, above, U.S. Const. amend. I, and contrast Procunier v. Martinez, 396, 405 (1974) ("But a policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims whether arising in a federal or state institution.  When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights").  See also id. at 408--22.

*[signature]* 2021-09-23

Exh. 1

# INCIDENT REPORT

**b. DEPARTMENT OF JUSTICE**    **FEDERAL BUREAU OF PRISONS**

### Part I - Incident Report

| | | | | |
|---|---|---|---|---|
| 1. Institution: THA CMU | | | Incident Report Number: | |
| 2. Inmate's Name: Gottesfeld, Martin | 3. Register Number: 12982-104 | 4. Date of Incident: September 16, 2021 | | 5. Time: 5:20 PM |
| 6. Place of Incident: THA CMU | 7. Assignment: Unassigned | | | 8. Unit: D |
| 9. Incident: Use of the Telephone for Abuses Other Than Criminal Activity (e.g., circumventing telephone monitoring procedures) | | 10. Prohibited Act Code(s) 297 | | |

**11. Description of Incident (Date: 09/20/2021 Time: 9:00 a.m. EST Staff became aware of incident):**

An unnamed journalist published an article on the RT website (https://on.rt.com/bgvy) on September 18, 2021, at approximately 1:12 p.m. The article was titled, " 'The law doesn't apply in America anymore,' hacktivist Marty Gottesfeld tells RT from jail." A review of the published article revealed inmate Gottesfeld participated in a telephone media interview with the RT journalist. Specifically, the article stated, "...he tells RT, in an exclusive telephone interview from jail." "...Marty Gottesfeld tells RT," and "...the accused cyber attacker claims, adding..."

A review of the inmate's communications revealed Gottesfeld made a call to Dana Gottesfeld, his wife, on September 16, 2020, at approximately 5:20 p.m. The review revealed the RT article was nearly verbatim to the communications in this call. At approximately two minutes in to the call, Dana mentioned she had a few questions that she would like to read to the inmate. The inmate gave his approval for her to read them. The first question she read annoyed the inmate and he stated, "I wonder if I want to be answering this series of questions or if someone should just go pound sand. Because that's the other option. I can just not answer at all, so...," which is a reflection of his acknowledgement of this being a 3rd party's question, not his wife's. Dana continued with reading the additional questions and the inmate answered each at length. Multiple times throughout the call, the inmate made comments to reflect his acknowledgement that the questions were from a 3rd party interviewer, one of which is notated above. Additionally, the inmate stated, "I've dealt with enough hostile people who don't want to do their homework" and "Yeah, tell him...(stutter and pause)...that's fine," (At this point, the inmate quickly changed their conversation to other subjects.)

Further review of the article revealed it was filled with quotes purportedly made by the inmate, although, the communication review revealed he had in-fact only made these comments during the call to Dana. It has been determined inmate Gottesfeld and Dana, both, knowingly conspired to circumvent monitoring procedures by relaying interview questions and responses between the inmate and an unknown 3rd party.

| 12. Typed Name/Signature of Reporting Employee: J. Wammler | 13.Date And Time: 09/20/21 11:50 AM |
|---|---|
| 14. Incident Report Delivered to Above Inmate By (Type Name/Signature): | 15 .Date Incident Report Delivered: 6/20/21 | 16. Time Incident Report Delivered: 1858HQ |

### Part II - Committee Action

**17. Comments of Inmate to Committee Regarding Above Incident:**

"I did no such interview. I've been provided neither a transcript of the call nor a recording of the call challenge the accuracy of this report. I still have not received the DHO report from the last incident report, which

**18. A. It is the finding of the committee that you:**

_____ Committed the Prohibited Act as charged.

_____ Did not Commit a Prohibited Act.

_____ Committed Prohibited Act Code(s).

**B.** ✓ The Committee is referring the Charge(s) to the DHO for further Hearing.

**C.** _____ The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days.

**19. Committee Decision is Based on Specific Evidence as Follows:** like this one was retaliatory. I mentioned UM Bayer's ongoing PREA violations on this call. This incident is the latest attempt to immunize Mr. Bayer against PREA. I had calls just like this and no incident reports. The distinguishing feature of this call was that it dealt with Mr. Bayer and PREA. No PREA interviews have ever been conducted the way they were for Ms. Owens. This is discriminatory. The greater weight of the evidence suggests a violation has occurred and this must be reviewed by DHO for greater sanctions.

**20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act):**

Loss GCT, Loss phone 60 days

**21. Date and Time of Action:** 09/22/2021 1410 (The UDC Chairman's signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings.) hcs-

R. Eisele R.E.
**Chairman (Typed Name/Signature)**    **Member (Typed Name)**    **Member (Typed Name)**

INSTRUCTIONS: All items outside of heavy rule are for staff use only. Begin entries with the number 1 and work up. Entries not completed will be voided by staff.
Distribute: Original-Central File Record; COPY-1-DHO: COPY-2-Inmate after UDC Action; COPY 3-Inmate within 24 hours of Part I Preparation

*Exh. 2*

**OPI:**        **CPD/CPB**
**NUMBER:**   **P5264.08**
**DATE:**      **1/24/2008**
**SUBJECT:**   **Inmate Telephone Regulations**



**U.S. Department of Justice**

Federal Bureau of Prisons

# Program Statement

**OPI:**   CPD/CPB

**NUMBER:**   P5264.08

**DATE:**   1/24/2008

**SUBJECT:**   Inmate Telephone Regulations

**"CORRECTED COPY 2/11/2008"**

**Boxed Bold - Federal Regulation**

Regular Type - Implementing Information

pro

© 2021 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

12982104

Inmates may submit telephone numbers for any person they choose, including numbers for courts, elected officials and members of the news media.    Attorneys may be included on an inmate's telephone list with the understanding that such calls are subject to monitoring.

pro|

1

© 2021 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

12982104

f.    **Limitations on Inmate Telephone Calls.**

d.    <u>Placement and Duration of Telephone Call.</u>   **The placement and duration of any telephone call is subject to availability of inmate funds.   Ordinarily, an inmate who has sufficient funds is allowed at least three minutes for a telephone call. The Warden may limit the maximum length of telephone calling based on the situation at that institution (e.g., institution population or usage demand).**

e.    <u>Exception.</u>   **The Warden may allow the placement of collect calls for good cause.   Examples of good cause include, but are not limited to, inmates who are new arrivals to the institution, including new commitments and transfers; inmates confined at Metropolitan Correctional Centers, Metropolitan Detention Centers, or Federal Detention Centers; pretrial inmates; inmates in holdover status; inmates who are without funds (see § 540.105(b)); and in cases of family emergencies.**

The Warden will establish the maximum length of telephone calls, ordinarily 15 minutes.   A warning tone ordinarily will be provided approximately one minute before the call is disconnected.   This applies to both debit and collect telephone calls.   The Warden determines the interval waiting period between completed telephone calls.

Inmates with ITS accounts are limited to 300 minutes per calendar month.   This applies to all inmates with an ITS account in Bureau institutions, and may be used for any combination of collect or direct-dial calls at the inmate's discretion. Ordinarily, the inmates will be allowed an extra 100 minutes per month in November and December.

Inmates who exhaust their 300 minute limitation may be provided additional minutes, at the Warden's discretion, for good cause.

The 300 minutes per calendar month limitation does not apply to an inmate's ability to place unmonitored legal telephone calls.

proj

**1**

© 2021 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

12982104

Exhi3

28 C.F.R. § 541.3 Prohibited acts and available sanctions

297

Use of the telephone for abuses other
than illegal activity which circumvent
the ability of staff to monitor
frequency of telephone use, content of
the call, or the number called; or to
commit or further a High category
prohibited act.

CFR                                                       1

© 2021 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

12982104

Date: 09/23/2021
Time: 01:33:15 PM
Location: THA

# Federal Bureau of Prisons
## TRULINCS Contact List - Phone
### Personal Inmate Information

**Inmate No: 12982104      Inmate Name: GOTTESFELD, MARTIN**

| Contact Name | Relation | Phone | Collect Block | Debit Block |
|---|---|---|---|---|
| Antoshkina, Nataliya | Other Relation | 79175788398 | | |
| Bar Association, Kentucky | Other Relation | 502-564-3795 | | |
| Bar Association, Vermont | Other Relation | 802-223-2020 | | |
| Bloom, Jordan | Other Relation | 703-725-4262 | | |
| Clemons, Angela | Other Relation | 479-381-3307 | | |
| County Circuit Cour, Vigo | Other Relation | 812-462-3241 | | |
| Court, U S Dist | Other Relation | 202-354-3000 | | |
| Defenders Office, Federal | Attorney | 317-383-3520 | | |
| Dist Court, U S | Other Relation | 317-229-3700 | | |
| District Court, U S | Other Relation | 212-805-0136 | | |
| Kushner, David | Other Relation | 917-843-3765 | | |
| Makarova, Natalia | Other Relation | 79255880433 | | |
| Markham, John J | Attorney | 617-699-4720 | | |
| Meeropol, Rachel | Attorney | 212-614-6432 | | |
| Of Appeal, U S Court | Other Relation | 202-216-7300 | | |
| Of Appeals, U S Court | Other Relation | 617-748-9057 | | |
| Pabian, Michael | Attorney | 339-227-0642 | | |
| Pavlo, Walter | Other Relation | 201-362-1208 | | |
| S Kane, Jeffrey | Other Relation | 626-200-6873 | | |
| Sample, Brandon C | Attorney | 802-441-4357 | | |
| Shaffie Atty-At-Law, Shawn | Attorney | 408-375-0967 | | |
| State Bar Assoc, Indiana | Other Relation | 317-639-5465 | | |
| Superior Court, Middlesex | Other Relation | 781-939-2700 | | |
| Tesoriero, Celeste | Attorney | 845-616-9565 | | |
| The General Counsel, Office Of | Other Relation | 202-225-9700 | | |
| The Indiana Att Gen, Office Of | Other Relation | 317-232-6330 | | |
| Trigg, Lisa | Other Relation | 812-231-4254 | | |
| Williamson, Aaron | Attorney | 317-434-0370 | | |
| Gottesfeld, Dana | Spouse | 310-923-5880 | Admin | Admin |



Exh. S

BP-A0740
JUN 10     **REQUEST FOR INMATE TELEPHONE RESTRICTION**

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

**INSTRUCTION:** This form is used by staff to request the Warden's approval to impose a telephone restriction in accordance with the policy on Telephone Regulations for inmates. This form is used when the telephone restriction requested relates to the inmate's PSF - Serious Telephone Abuse, or a pending investigation or disciplinary action for possible telephone abuse. A telephone restriction for one of these purposes must be necessary to protect the safety, security, or good order of the institution, or to protect the public. A telephone restriction imposed **pending** investigation or disciplinary action for possible telephone abuse is limited to 30 days duration and must be renewed at the of the 30 day period, or be automatically discontinued by Trust Fund Branch staff. Inmates dissatisfied with the Warden's decision may appeal through the Administrative Remedy Program.

| Inmate's Name | Reg. No. | Institution |
|---|---|---|
| Gottesfeld, Martin | 12982-104 | FCC Terre Haute |

**Part I - Request for Telephone Restriction** (For the following reason(s) insert a brief description)
Pending investigation and possible disciplinary action for telephone abuse.

The above - inmate is recommend for the following telephone restriction; insert description and termination date, if applicable:
30 Day suspension or until the conclusion of the investigation and any discipline which may result.

| Requesting Staff Member's Name (Printed and Signature) | Title | Date Signed |
|---|---|---|
| J./Jodi Vampion | Intelligence Analyst | 9/20/2021 |

**Part II - Warden's Consideration :** the telephone restriction requested is (check one):

| ☑ APPROVED | Warden's Signature | Date Signed |
| ☐ DENIED | | 9/20/2021 |

**Part III - Distribution :** A copy of this form was delivered to the inmate on the date of:    9/20/2021

By: Delivering Staff Member's Printed Name and Signature    J. Wheeler

Original - Inmate;  Copy - Trust Fund Section;  Copy - Inmate Central File, Section 3, unless FOI Exempt

PDF         Prescribed by P5264

Exhibit G
28 C.F.R. § 541.3

299

Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another High severity prohibited act. This charge is to be used only when another charge of High severity is not accurate. The offending conduct must be charged as "most like" one of the listed High severity prohibited acts.

**CFR**                                    **1**

© 2021 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

12982104

*Exh.*

28 C.F.R.

# SUBPART E -- CONTACT WITH NEWS MEDIA

## § 540.60 Purpose and scope.

The Bureau of Prisons recognizes the desirability of establishing a policy that affords the public information about its operations via the news media. Representatives of the news media (see § 540.2) may visit institutions for the purpose of preparing reports about the institution, programs, and activities. It is not the intent of this rule to provide publicity for an inmate or special privileges for the news media, but rather to insure a better informed public. The Bureau of Prisons also has a responsibility to protect the privacy and other rights of inmates and members of the staff. Therefore, an interview in an institution must be regulated to insure the orderly and safe operation of the institution.

[44 FR 38247, June 29, 1979]

## § 540.61 Authorization.

(a) A news media representative who desires to make a visit or conduct an interview at an institution must make application in writing to the Warden, indicating that he or she is familiar with the rules and regulations of the institution and agrees to comply with them.

(b) As a condition of authorizing interviews and making facilities available to conduct an interview, the news media representative shall recognize a professional responsibility to make reasonable attempts to verify any allegations regarding an inmate, staff member or institution.

(c) A representative of the news media is requested to provide the Bureau of Prisons an opportunity to respond to any allegation, which might be published or broadcast prior to distribution.

CFR                                                    **1**

© 2021 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(d) A representative of the news media shall collect information only from the primary source. A representative of the news media may not obtain and use personal information from one inmate about another inmate who refuses to be interviewed.

(e) The Warden may be contacted concerning discussions or comments regarding applicability of any rule or order.

(f) Failure to adhere to the standards of conduct set forth by this rule for the news media representative constitutes grounds for denying that news media representative, or the news organization which he or she represents, permission to conduct an interview.

(g) Any questions as to the meaning or application of this subpart are resolved by the Director of the Bureau of Prisons.

[44 FR 38247, June 29, 1979]

## § 540.62 Institutional visits.

(a) A media representative shall make advance appointments for visits.

(b) When media representatives visit the institutions, photographs of programs and activities may be taken, and media representatives may meet with groups of inmates engaged in authorized programs and activities. An inmate has the right not to be photographed and not to have his or her voice recorded by the media. A visiting representative of the media is required to obtain written permission from an inmate before photographing or recording the voice of an inmate participating in authorized programs and activities.

(c) The Warden may suspend all media visits during an institutional emergency and for a reasonable time after the emergency.

CFR                                                                              2

© 2021 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

12982104

(d) An inmate currently confined in an institution may not be employed or act as a reporter.

(e) Interviews by reporters and others not included in § 540.2 may be permitted only by special arrangement and with approval of the Warden.

[44 FR 38247, June 29, 1979; 75 FR 21163, 21164, Apr. 23, 2010, as corrected at 75 FR 25110, 25111, May 7, 2010, and as confirmed at 77 FR 19932, 19933, Apr. 3, 2012]

## § 540.63 Personal interviews.

(a) An inmate may not receive compensation or anything of value for interviews with the news media.

(b) Either an inmate or a representative of the news media may initiate a request for a personal interview at an institution.

(c) Visits by the news media to conduct personal interviews are subject to the same conditions stated in § 540.62. A media representative shall make a request for personal interview within a reasonable time prior to the personal interview.

(d) Staff shall notify an inmate of each interview request, and shall, as a prerequisite, obtain from the inmate written consent for the interview prior to the interview taking place. The written consent or denial becomes part of the inmate's central file.

(e) As a prerequisite to granting the interview, an inmate must authorize the institutional staff to respond to comments made in the interview and to release information to the news media relative to the inmate's comments.

CFR                                      3

© 2021 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

12982104

(f) The Warden shall normally approve or disapprove an interview request within 24 to 48 hours of the request.

(g) The Warden shall document any disapproval. A request for interview may be denied for any of the following reasons.

(1) The news media representative, or the news organization which he or she represents, does not agree to the conditions established by this subpart or has, in the past, failed to abide by the required conditions.

(2) The inmate is physically or mentally unable to participate. This must be supported by a medical officer's statement (a psychologist may be used to verify mental incapacity) to be placed in the inmate's record, substantiating the reason for disapproval.

(3) The inmate is a juevnile (under age 18) and written consent has not been obtained from the inmate's parent or guardian. If the juvenile inmate's parents or guardians are not known or their addresses are not known, the Warden of the institution shall notify the representative of the news media of the inmate's status as a juvenile, and shall then consider the request.

(4) The interview, in the opinion of the Warden, would endanger the health or safety of the interviewer, or would probably cause serious unrest or disturb the good order of the institution.

(5) The inmate is involved in a pending court action and the court having jurisdiction has issued an order forbidding such interviews.

(6) In the case of unconvicted persons (including competency commitments under 18 U.S.C. 4244 and 4246) held in federal institutions, interviews are not authorized until there is clearance with the court having jurisdiction, ordinarily through the U.S. Attorney's Office.

(7) The inmate is a "protection" case and revelation of his or her whereabouts would endanger the inmate's safety.

(h) Interviews are normally held in the institution visiting room during normal weekday

CFR                                                        4

© 2021 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

12982104

business hours. The Warden may:

(1) Determine that another location is more suitable for conducting the interview;

(2) Limit interview time for the entire institution if the Warden determines that the interviews are imposing a serious drain on staff or use of the facilities;

(3) Limit to one one-hour interview per month for an inmate in segregation, restricted, holdover, control unit, or hospital status if required by special security, custodial, or supervisory needs; and

(4) Limit the amount of audio, video, and film equipment or number of media personnel entering the institution if the Warden determines that the requested equipment or personnel would create a disruption within the institution.

(i) In conjunction with the personal interview, if the member of the media wishes to tour the institution, he or she must comply with the provisions of § 540.61.

(j) Interviews are not subject to auditory supervision.

[44 FR 38247, June 29, 1979]

© 2021 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

12982104

Exh. 8

28 C.F.R.

## SUBPART H -- INMATE MANUSCRIPTS

### § 551.80 Definition.

As used in this rule, manuscript means fiction, nonfiction, poetry, music and lyrics, drawings and cartoons, and other writings of a similar nature.

[44 FR 38252, June 29, 1979]

### § 551.81 Manuscript preparation.

An inmate may prepare a manuscript for private use or for publication while in custody without staff approval. The inmate may use only non-work time to prepare a manuscript.

[44 FR 38252, June 29, 1979]

### § 551.82 Mailing inmate manuscripts.

An inmate may mail a manuscript as general correspondence, in accordance with part 540, subpart B of this chapter. An inmate may not circulate his manuscript within the institution.

[44 FR 38252, June 29, 1979]

© 2021 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

12982104

## § 551.83 Limitations on an inmate's accumulation of manuscript material.

The Warden may limit, for housekeeping, fire-prevention, or security reasons, the amount of accumulated inmate manuscript material.

[44 FR 38252, June 29, 1979]

© 2021 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

12982104

**U.S. Department of Justice** Exh. 28

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP–DIR–9 including any attachments must be submitted with this appeal.

From: GOTTESFELD, MARTIN S.     12982-104     D     FCI-THA

    LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A—REASON FOR APPEAL** This is an appeal of the guilty finding for incident report (IR) 3552752, "Offense Code: 297," "DHO Hearing" by Mr. Jason Bradley on "12-01-2021." *See* DHO Rep., Attachm. 1. The "delivered to Inmate" date of 12-08-22, *id.* at 3, § IX, is accurate and this appeal is timely and properly filed. *See* incl'd Timel. Memo.; Prog. Stat. 1330.18 Administrative Remedy Program (Jan. 6, 2014) ("PS ARP") at chs. 8 (citing 28 C.F.R. § 542.14(d)(2) (DHO appeals are properly filed "initially to the Regional Director for the region where the inmate·is currently located")), 9 (citing 28 C.F.R. § 542.15(a) (20-day time to file a reg. appeal)).

    The decision cannot stand because, *e.g.*, I was denied a dispositive witness, Ms. Jamie Wheeler. *See*, in SENTRY, the relevant U.S. Dep't of Justice, Fed. Bureau of Prisons, Form BP–A0294 Notice of Discipline Hearing Before the (DHO), electing to call Wheeler. Absent Wheeler I could not challenge the determination that the call divulged sensitive information. Wheeler had previous to the hearing confirmed I could read aloud the very same statement inside the institution. Moreover, the BOP had previously allowed the very person in question, Mr. Jasper Knabb, to name me on the phone and do background research on me to obtain, *e.g.*, information about my social-media following. Wheeler also would have confirmed—albeit reluctantly—that Knabb's ratting is a matter of public record. *See United States v. Coviello* (1st Cir. 2000) (Knabb cooperated in a sting operation that netted felony convictions on multiple defendants). My telling a journalist that Knabb is a rat divulged nothing not already known to the public and within the institution.

    Bradley falsified his DHO report—as he tends to do—to claim "Inmate waived right to witness." DHO Rep. § III(C)(1), Attachm. 1 at 1. But I never waived witnesses and no signed documentation exists to that effect. *Contrast* DHO Statement of Martin Gottesfeld ("Inm. Stat."), Attachm. 2 ("Wheeler openly admitted I could read my statement from the call out

08 DEC. 2022 (THU.) <– same day    PLEASE SEE CONT. PG. –>

I rec'ved the report.

DATE                                   SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____

DATE                                   REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                CASE NUMBER: _____

------------------------------------------------------------

CASE NUMBER: _____

**Part C—RECEIPT**

Return to: _____

      LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____

DATE                         BP–230(13)

REGIONAL ADMINISTRATIVE REMEDY APPEAL OF IR 3552752 CONT. PG. 1 OF 1

GOTTESFELD, MARTIN S.        REG. NO. 12982-104          D-UNIT      FCI-THA

loud *inside* the prison") (citing preserved audio/video of my ca. 1400 hrs. Friday, October 1,
2021, interview with Ms. Wheeler wherein she stated such).

The decision also cannot stand because the UDC "was conducted in violation of, *inter alia*, 28
C.F.R. § 115.64(a)(1) (staff must separate victims from alleged sexual abusers)." Imm. Stat. at
1, ¶ 5. "I continue to complain against UDC chair Mr. [Todd] Royer under [the Prison Rape Elimin-
ation Act (PREA)]." *Id.* Royer—one of the subjects of the call in question—was the sole UDC
member. *See,* in SENTRY, the IR at the UDC section for Royer's signature. I was "prejudiced by his
[Royer's] sanctions recommendation." Imm. Stat. at 1, ¶ 5.

"The phone was only cut off by staff when I mentioned the PREA/staff compromise of CO Ms. Owens,
long after the alleged reference to Mr. Knabb." Imm. Stat. at 1, ¶ 6. "The goal of the IR is un-
lawful suppression of reporting the PREA/staff compromise." *Id.* (citing ¶¶ 1-6).

And not only do I have PREA complaints lodged against Mr. Royer, whom I mentioned on the call,
but Mr. Royer was the unit manager under whose nose the PREA staff compromise of Ms. Owens went on
for weeks. Mr. Royer belongs nowhere near that UDC. *See, e.g.,* 28 C.F.R. § 541.7(b) ("UDC members
will not be [...] significantly involved in the incident"), § 115.64(a)(1) (staff must "Separate
the alleged victim," i.e. me, and "abuser," i.e. Royer).

There can be no serious argument the IR is retaliatory because at the DHO hearing Bradley open-
ly took exception to my naming staffers to the press and the only context in which staffers came
up in that call was in the context of PREA violations. Bradley's stance was not only retaliatory
in violation of the First Amendment, it was a denial of an impartial decisionmaker, in violation
of the Due Process Clause.

Bradley then withheld the DHO Rep. for over a year when I should have received it within 15
work days. Now the DHO report is itself so late as to violate due process. My release date rapid-
ly approaches. *See* Petition, *Gottesfeld v. Rule,* No. TBD (S.D. Ind. 2022) (arguing for immediate
release through § 3621(e), FSA and GCT). I only received the DHO report now because I filed in
court about Bradley depriving me of it. *Id.* Withholding the report for over a year, as inarguably
happened, was a constructive denial of my right to written findings that prevented me from exhaus-
ting in time and making it to the Court. For this reason too the IR must be expunged.

by: ~~~~~~~                                          08 DEC. 2022 (THU.)
    MARTIN GOTTESFELD

BP-A0304
JAN 17

# DISCIPLINE HEARING OFFICER REPORT

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU PRISONS**

| | |
|---|---|
| Institution: **FCC Terre Haute** | Incident Report number: **3552752** |
| NAME OF INMATE: **GOTTESFELD, Martin** | REG. NO.: **12982-104**   UNIT: **CMU** |
| Date of Incident Report: **09-30-2021** | Offense Code: **297** |
| Date of Incident: **09-30-2021** | |

Summary of Charges: **Phone Abuse-Circumvention**

**I.   NOTICE OF CHARGE(S)**

A. Advanced written notice of charge (copy of Incident Report) was given to inmate on (date) **09-30-2021** at (time) **1930** (by staff member) **Lotz.**

B. The DHO Hearing was held on (date) **12-01-2021** at (time) **1305.**

C. The inmate was advised of the rights before the DHO by (staff member): **Royer** on (date) **10-05-2021** and copy of the advisement of rights form is attached.

**II.   STAFF REPRESENTATIVE**

A. Inmate waived right to staff representative. Yes _____ No **X** .

B. Inmate requested staff representative and _____ appeared.

C. Staff Representative statement: **I met with the inmate prior to the hearing. He provided me a written statement to submit to the DHO.**

D. Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that: (New Staff Representative Name) _____ was selected.

E. Staff representative **A. Payton** was appointed.

**III.   PRESENTATION OF EVIDENCE**

A. Inmate _____ (admits) **X** (denies) _____ (neither) the charge(s).

B. Summary of inmate statement:
**This incident report was written in retaliation.**

C. Witnesses:
1. Inmate waived right to witness. Yes **X** No_____

2. The following persons were called as witness at this hearing and appeared (Each witness name and statement listed below):

3. The following persons requested were not called for the reason(s) given (Each witness name and statement listed below):

4. Unavailable witnesses were requested to submit written statements and those statements received were considered (Each witness name and statement listed below).

D. Documentary Evidence: In addition to the Incident Report and Investigation, the DHO considered the following documents: **Recorded Telephone call.**

E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate. The confidential information was documented in a separate report. The confidential information has been (confidential informants have been) determined to be reliable because: _____ .

**IV.   FINDINGS OF THE DHO**

_____ A. The act was committed as charged.          _____ C. No prohibited act was committed: Expunge according to Inmate Discipline PS.

**X** B. The following act was committed:

**397** .

BP-A0304
JAN 17

# DISCIPLINE HEARING OFFICER REPORT

## U.S. DEPARTMENT OF JUSTICE

### FEDERAL BUREAU PRISONS

| Name of Inmate:<br>GOTTESFELD, Martin | Reg. No.:<br>12982-104 | Hearing Date:<br>12-01-2021 |
|---|---|---|

V.    SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documents, etc.):

You were advised of your rights before the Discipline Hearing Officer and stated that you understood those rights. You requested a staff representative, and you were provided with one. You requested no witnesses and a written statement on your behalf.

The DHO finds that you committed the prohibited act of Code 397: Phone Abuse.

The DHO considered the Incident Report which the reporting officer states, On 09-30-2021 at 5:22 PM CTU staff were monitoring live inmate phone calls. During this time Gottesfeld calls 703-725-4262 listed as Jordan Bloom on his contact list. During the call Gottesfeld is agitated and tells Jordan he has been in solitary confinement. At approx. 3:25 into the call Gottesfeld tells Jordan he was forced to move in with a "rat." At 4:00 into the call Gottesfeld states that he has a statement would like to read. At 8:10 into the call Jordan states "So you caught a rat. What's the rats name?" Gottesfeld clearly answers "I can't give that to you over the phone or they'll punish me worse." Gottesfeld then goes on to start reading his prepared statement about the rat, whom he calls Mr. K and various staff members. At 10:33 into the call Gottesfeld refers to Mr. K as Mr. Knabb. This series of events shows that Gottesfeld was aware of the rules against divulging information about other inmates within the Buereau of Prisons or CMU. However, even with acknowledging the rules he went on to give Jordan information about other inmates over the phone. Gottesfeld goes on with his statement about his feelings toward staff and experiences in the CMU. This call is not for general conversation but appears to be a recorded statement for Jordan Bloom will forward to media, as Gottesfeld has done in the past.

The listened to the record phone call, which reaffirms the reporting officer's statement.

The DHO made a review of your written statement, which no exculpatory information was found in your statement.

The DHO considered your statement to the investigating Lieutenant stating, "There is nothing in the Code 297 about names this is a direct attempt to cover up and retaliate against me for the PREA. Also, an attempt to hinder me from press about Mrs. Owens and Patrick Hayden."

The DHO considered your statement to the UDC stating, This is retaliatory no rule predicates me from naming another inmate.

The DHO considered your statement to the DHO stating, This incident report was written in retaliation.

In deciding this case, the DHO found no circumvention took place. However, from the context of your conversation via phone poses a general threat to the safety and orderly running of the institution. Therefore, the DHO finds that this meets the elements of offense for a Code 397, Phone Abuse. The DHO based the decision on the greater weight of the evidence. Greater was given to the incident report, and recorded phone call.

VI.    SANCTION OR ACTION TAKEN (List each prohibited act with respective sanctions for that act):

Code 397:
90 Days Loss of Phone

2

**DISCIPLINE HEARING OFFICER REPORT**

BP-A0304
JAN 17

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU PRISONS**

| Name of Inmate: | Reg. No.: | Hearing Date: |
|---|---|---|
| GOTTESFELD, Martin | 12982-104 | 12-01-2021 |

VII.   REASON FOR EACH SANCTION OR ACTION TAKEN:

The action on the part of any inmate to use the telephone in an unauthorized manner poses a serious threat to the ability of staff to control the use of the telephone and monitor whether inmates are making calls for prohibited or illegal purposes.  It is indicative of the intent to participate in unauthorized activities that could lead to disruptive behavior.  The use of telephones is a privilege for inmates to maintain contact with their family and to maintain ties with them and not for criminal use.  The sanctions imposed by the DHO were taken to express the gravity of the infraction and let the inmate know that he, and he alone, will be held responsible for his actions at all times.

VIII. APPEAL RIGHTS:    __X__   The inmate has been advised of the findings, specific evidence relied on action and reasons for the action.  The inmate has been advised of the right to appeal this action within 20 calendar days under the Administrative Remedy Procedure.  A copy of this report has been given to the inmate.

IX.   Discipline Hearing Officer

| Printed Name | Signature | Date |
|---|---|---|
| J. Bradley DHO | | 09-28-2022 |

DHO report delivered to Inmate by:

R. Eisele
Printed Name (Staff)        Signature:        12·08·22/0928hrs.
                                              Date and Time:

Prescribed by P5270                    Replaces BP-A0304 of AUG 11

3

DHO Statement of Martin Gottesfeld — Page 1 of 2 — Wed, Oct. 6, 2021

1. "They'll punish me worse" is not cognizance of a rule violation. See, e.g., the audio/video presumably preserved for U.S. District court of my conversation with prisoner Denton the day before the call wherein I clearly stated the de facto prohibition on naming other prisoners is unconstitutional.

2. Other prisoners name me on the phone without disciplinary action, e.g., Mr. Knabb has named me on the phone and thus ascertained the size of my social-media following.

3. Interim CMU Intelligence Resource Officer Ms. Jamie Wheeler openly admitted I could read my statement from the call out loud inside the prison. See preserved audio video of my ca. 1400 hrs, Friday, October 1, 2021, interview with Ms. Wheeler wherein she stated such. Reading the statement aloud to other prisoners in the FCI doesn't threaten "safe and orderly" operations; thus neither can reading it to a journalist — which Jordan Bloom is.

4. No actual rule precludes me from naming other inmates. See Procunier v. Martinez, 416 U.S. 396, 415 (1974) (SCOTUS invalidates prison censorship of "inflammatory, political, racial, religious, or other views, and matter deemed defamatory or otherwise inappropriate."). Nowhere does the incident report (IR) specify any evidence of any credible threat to "safe and orderly" operations. See IR

5. The CDC was conducted in violation of, intra alia, 28 C.F.R. § 115.64(a)(1) (staff must separate victims from alleged sexual abusers). I continue to complain against CDC chair Mr. Royer under PREA.

6. The phone was only cut off by staff when I mentioned the PREA/staff compromise of CO Ms. Owens, long after the alleged references to Mr. Knabb. The goal of the IR B unlawful suppression of reporting the PREA/staff compromise, as shown by ¶¶ 1-6 intra. Mr. Knabb's ratting is already a matter of public record. U.S. v. Coviello (1st Cir. 2003)

7. IRs continue to be delivered to me unnumbered. I am yet to receive the DHO report from IR no. 342,792, heard seven months ago. This violates due process. See Scruggs v. Jordan 485 F.3d 934, 939 (7th Cir. 2007). Like its predecessors,

DHO Statement of Martin Gottesfeld — Page 2 of 2 — Wed., Oct. 6, 2021

this IR too is unconstitutional and retaliatory.

8. Nowhere does the IR provide any evidence that I "circumvent[ed] the ability of staff to monitor frequency of telephone use, content of the call, or the number called." See 28 C.F.R. § 541.3 Prohibited acts and available sanctions, at code 297. See also PS 5270.09 at table 1, code 297 (same). The IR also provides no evidence I "commit[ted] or further[ed] a High category prohibited act." Id. Cf., e.g., prohibited-act code 299 ("... The offending conduct must be charged as 'most like' one of the listed High severity prohibited acts). In contrast, "the disciplinary decision must be supported by at least 'some evidence.'" Scruggs, supra, at 941.

9. Mr. Royer et al. illegitimately denied me my staff rep. of choice: CO S. Harvey.

by: [signature]

Martin S. Gottesfeld, Reg. no. 12982-104

MARTIN GOTTESFELD
REG. NO. 12982-104
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 33
TERRE HAUTE, IN 47808

**UNITED STATES POSTAL SERVICE®**

USPS TRACKING #

9114 9022 0078 9988 6600 61





⇔ 12982-104 ⇔
North Central Region
400 State AVE
Kansas CITY, KS 66101-2492
United States

APPEAL OF IR 3549119
THURSDAY, DECEMBER 8, 2022
CONTENTS—
•) FORM BP-230(13) ("BP-10"); •) CONT. PG. IN QUADRUPLICATE;
•) DHO REP. (3 PGS.); •) FORM BP-A0294 (1 PG.) •) INM. STAT. (3 PGS., PLUS
IR 3549119 (1 PG.), EXH. 1; EXC. P5264.08 (3 PGS.), EXH. 2;
28 C.F.R. § 541.3 AT CODE 297 (1 PG.), EXH. 3;
TRULINCS PHONE LIST (1 PG.), EXH. 4; FORM BP-A0740 (1 PG.), EXH. 5;
28 C.F.R. § 541.3 AT CODE 299 (1 PG.), EXH. 6;
28 C.F.R. §§ 540.60 ET SEQ. (5 PGS.); AND
28 C.F.R. §§ 551.80 ET SEQ. (2 PGS.)).

---

MARTIN GOTTESFELD
REG. NO. 12982-104
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 33
TERRE HAUTE, IN 47808

**UNITED STATES POSTAL SERVICE®**

USPS TRACKING #

9114 9022 0078 9988 6600 85

⇔ 12982-104 ⇔
North Central Region
400 State AVE
Kansas CITY, KS 66101-2492
United States

APPEAL OF IR 3552752
THURSDAY, DECEMBER 8, 2022
CONTENTS—
•) FORM BP-230(13) ("BP-10"); •) CONT. PG. IN QUADRUPLICATE;
•) DHO REPORT (3 PGS.); AND •) INM. STATM. (2 PGS.).