UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

FILED
02/17/2023
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

MARTIN GOTTESFELD, Petitioner,
*pro se*,

v.

T. RULE, Warden of The
Federal Correctional Institution,
Terre Haute, Indiana,
Respondent.

No. 2:22-cv-571-JRS-MJD.

## URGENT MOTION TO NOTE OBJECTIONS

MARTIN GOTTESFELD, Petitioner, *pro se*, respectfully moves the Court to note his objection "to any time exceeding three days in which for Respondent to answer the" Court's Order to Show Cause, dkt. 15, "especially given that Respondent read this Amended Petition and its predecessor days or a week before they reached the Court." Amended Petition at ¶ 11, dkt. 10-1 at 3 (citing 28 C.F.R. § 540.203 (mail to U.S. courts and judges is read for contents); Court-access BP-11 Cent. Office's Resp. (Nov. 21, 2019) ("all incoming and outgoing mail[...] must be properly and thoroughly reviewed"), *Gottesfeld v. Lammer*, 2:20-cv-12-JRS-MJD (S.D. Ind.) (hereinafter *Lammer*), dkt. 100-58 at 2)). "Thus Respondent has already had ample time to prepare his arguments." *Id*.

Petitioner received the Court's January 31, 2023, Order on Thursday, February 9, 2023, postmarked February 2, 2023.

As it stands, Respondent has a full 42 days "until March 14, 2023, in which to answer the allegations of the habeas petition." Order at ¶ 2, dkt. 15 (emphasis removed). The relevant statute, in contrast, requires that the "order to show cause [...] shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed." Amended Petition at ¶ 10, dkt. 10-1 at 3 (quoting 28 U.S.C. § 2243) (alteration applied). Thus the statutory limitation for Respondent's return is February 20, 2023, and only then with "good cause" shown.

Petitioner respectfully asks that the Court note his objection to the March 14, 2023, deadline as 22 days beyond the statutory maximum and inequitable with the facts at bar.

The Court further ordered: "Any motions for an extension of time filed by the respondent must

include the petitioner's anticipated release date." Order at ¶ 3, dkt. 15.

Petitioner respectfully asks the Court to note his objection to *any* such extension for *any* purported cause whatsoever.

Petitioner acknowledges that the Court's Order gives Respondent until the same date, March 14, 2023, that Petitioner had specified:

> Even if denied the 120 days for TDAT, the 54 days contested GCT and the 111 days contested FSA time credit, i.e. applying only the one-year credit for RDAP under § 3621(e)(2)(B) and the 274 days FSA credit that the parties seem to agree is due, Petitioner's release date would be Mar. 14, 2023.

Amended Petition at 11, n. 14, dkt. 10-1. In the time between the Amended Petition on January 2, 2023, and the Court's Order on January 31, 2023, for reasons unknown and unspecified to Petitioner, Respondent publicly conceded much or all of the FSA time credit contested at bar. *See, e.g.,* https://www.bop.gov/inmateloc (last visited ca. Jan. 27, 2023) (listing Petitioner's anticipated FSA release date as November 15, 2023). Previously, Respondent had publicly listed Petitioner's release date as a full 121 days later, i.e. March 15, 2024.

By the time of Respondent's changed calculation, Petitioner had earned more FSA credit. *Cf.* Table 1—2022 FSA Dates & Earnings, Amended Petition at ¶ 37, dkt. 10-1 at 11 (showing Petitioner's FSA earnings through Dec. 21, 2022). At the time of Respondent's changed calculation, Petitioner's method of calculating his earliest release date absent TDAT, RDAP and the 54 days contested GCT would have yielded a result of October 21, 2023, i.e. at most a 25-day time-credit discrepancy from Respondent's November 15, 2023, result. But, Respondent has discretion to apply Petitioner's FSA credit toward pre-release custody that would be unreflected in Respondent's November 15, 2023, result. *See* 18 U.S.C. § 3624(g)(2). Thus no FSA discrepancy may remain at all, if Respondent plans to put Petitioner in home confinement, for example, by October 21, 2023, then release Petitioner on November 15, 2023.

In any event, the same method that yielded the March 14, 2023, date in the Amended Petition, i.e. excluding the 120 days for TDAT, the 54 days contested GCT and the remaining 25-day possible FSA discrepancy, and applying only the one-year credit for RDAP under § 3621(e)(2)(B), now yields a date already passed: November 15, 2022.

And by the time this Motion to Note Objections is entered, any action by Respondent is plainly futile. Under Respondent's own policy it is now too late for Petitioner to begin the RDAP: "To ensure the Bureau provides evidence based treatment in its drug abuse treatment program, the RDAP is a minimum of 500 hours. The RDAP has a duration of 9 to 12 months." U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement 5330.11, Change Notice 1, Psychology Treatment Programs, at § 2.5.1 (Apr. 25, 2016). Even at the low end of the 9–12 month range, less than nine months now remains between the soonest that Respondent could possibly enroll Petitioner in a new RDAP class and the November 15, 2023, release date that Respodent now concedes for Petitioner.

Respondent may not now seriously dispute that Petitioner timely requested the RDAP. *See* Amended Petition at ¶¶ 48–49, dkt. 10-1 at 13 (Petitioner requested the RDAP in writing and Respondent indicated assent by August 11, 2021). Respondent, not Petitioner, squandered the next 18 months despite Petitioner's timely and strenuous objections. *Id.* at ¶¶ 50–73 (Petitioner filed an SF-95 and numerous remedies and completed all RDAP-related tasks available to him promptly and meritoriously) (citations omitted).

Further, Petitioner continues to assert he is entitled to the return of his 54 days of GCT, such that even if he were to begin the RDAP today, insufficient time remains for him to finish it. Respondent similarly squandered the past 10 months instead of using them to resolve Petitioner's GCT. *See, e.g.*, Amended Petition at ¶¶ 116–34, 149–59, 162–77, 189–223 (Respondent refused to process Petitioner's remedy despite its compliance with Respondent's own instruction to provide the incident-report no., charge code and date of hearing, then refused to process Petitioner's remedy in violation of 34 U.S.C. § 30307(b) (BOP must follow the AG's PREA standards), 28 C.F.R. § 115.52(b)(1) (under the AG's PREA standards, the BOP may not refuse to process a PREA-related remedy on the basis of untimeliness), and now continues to retaliate openly against Petitioner's remedy filings); *id.* at ¶¶ 254–83, 288, 302–11 (Respondent failed to deliver DHO report for over a year and missed numerous remedy deadlines before ultimately admitting the remedy process was an indefinite delay).

The Justice Department's inspector general has showed that Respondent also improperly delayed in applying FSA credit to prisoners' sentences. *See* U.S. Dep't of Justice, Office of the Inspec-

tor General, No. 22-007, "Management Advisory Memorandum: Impact of the Failure to Conduct Formal Policy Negotiations on the Federal Bureau of Prisons' Implementation of the FIRST STEP Act and Closure of Office of Inspector General Recommendations," at 6-8 (2021). Those improper delays clearly include Respondent's latest concession of at least 86 days of Petitioner's FSA credit, *supra*.

Absent those delays, perhaps Respodent would have timely acted on Petitioner's remedies and placed Petitioner in the RDAP. *See, e.g.,* U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement 5330.11, Change Notice 1, Psychology Treatment Programs, at § 2.5.5 (Apr. 25, 2016) ("Institution DAP Coordinators and Regional Psychology Program Coordinators will monitor waiting lists to ensure inmates are transferred for RDAP with sufficient time to complete the entire RDAP program before their release from Bureau custody").

But now is too late. And, given the uncontested and uncontestable facts, no good cause exists to extend Respondent more than the three days implied by statute to answer the Court's order, let alone to provide him more than twice the statutory limitation. Respondent has already squandered years and, on the other side of the balance of equities, Petitioner's immediate liberty interest simply weights too heavily. Providing Respodent more time will not let him avoid judgment in this case and every day Petitioner remains in prison is an irreversible injustice.

Respectfully filed Sunday, February 12, 2023, under the prison-mailbox rule, *Houston v. Lack*, 487 U.S. 266 (1988), by mailing to the Court in an envelope with sufficient affixed pre-paid First Class U.S. postage and handed at the next opportunity to Mr. Schmelensee ~~Ms. Jamie Wheeler~~ of the FCI Terre Haute D-unit team in his ~~her~~ official capacity as an agent of Respondent and of his counsel,

by: /s/
    Martin Gottesfeld, *pro se*
    Reg. no. 12982-104
    Federal Correctional Institution
    P.O. Box 33
    Terre Haute, IN 47808.

CERTIFICATE OF SERVICE

I, Martin Gottesfeld, *pro se*, certify I caused a digital copy of the foregoing document to be served upon Respondent in the above-captioned case, and on his counsel, by mailing this copy to the Court Sunday, February 12, 2023, or my first opportunity thereafter. *See* 28 C.F.R. § 540.203 (mail to U.S. courts and judges is read for contents).

by: /s/
Martin Gottesfeld.