FILED
03/08/2023
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

MARTIN GOTTESFELD, Petitioner,
*pro se*,

v.

T. RULE, Warden of The
Federal Correctional Institution,
Terre Haute, Indiana,
Respondent.

No. 2:22-cv-571-JRS-MJD.

## SUPPLEMENTAL OR RENEWED MOTION TO NOTE OBJECTIONS

MARTIN GOTTESFELD, Petitioner, *pro se*, respectfully supplements or renews—whichever is appropriate—his Urgent Motion to Note Objections, dkt. 17.

1. Petitioner prospectively objected "to any time exceeding three days in which for Respondent to answer" the subsequent Order to Show Cause. Amended Petition at ¶¶ 10–11, dkt. 10-1 at 3 (citing 28 U.S.C. § 2243 (The "order to show cause shall be [...] returned within three days unless for good cause additional time, not exceeding twenty days, is allowed")) (other citations omitted).

2. The Court then gave Respondent 42 days to return its Order to Show Cause, dkt. 15.

3. Petitioner, upon receipt of the Court's Order, objected again "to any time exceeding three days in which for Respondent to answer" the Court's Order and "to *any*" motion by Respondent for an extension "for *any* purported cause whatsoever." Urgent Motion to Note Objections, dkt. 17.

4. Petitioner has received no acknowledgement of his objections from the Court.

5. But if the Court has acknowledged Petitioner's objections and said acknowledgement is yet to reach Petitioner, then Petitioner submits this filing as a renewal of his objections; otherwise Petitioner submits this filing as a supplemental motion to note his objections.

6. An objective observer already would have inferred that Respondent uses his Inmate Financial Responsibility Program (IFRP) to retaliate against Petitioner's protected conduct. *See, e.g.*, Amended Petition at ¶¶ 116–223 (hours after Petitioner followed Respondent's central office's rem-

edy instruction to request a staff memo. that was adverse to Respondent and Respondent's staff re the Court-access Incident Report (IR) 3338082, one of those same staffers increased Petitioner's IFRP schedule from $25 per quarter to $1,300 per quarter, despite 1) that staffer's being the wrong official to adjust Petitioner's IFRP schedule under policy; 2) Petitioner's balance at all relevant times being far below the $1,300 amount demanded; and 3) Petitioner's new arrival at FCI Terre Haute, such that the TRUst-fund Limited INmate Computer System (TRULINCS) reflected that Petitioner had "$0.00" considered for IFRP payments, then, when Petitioner wrote his wife that Respondent and his staff were extorting Petitioner, Respondent deleted Petitioner's long-standing TRULINCS contacts for his wife and media representatives while refusing to provide Petitioner any paperwork documenting the deletions) (citations omitted).

7. Petitioner signed the IFRP contract "under duress" to maintain his RDAP eligibility. Amended Petition at ¶¶ 201, 206, dkt. 10-1 at 32 (citations omitted). *Contrast* Individualized Needs Plan–Program Review, Aug. 11, 2022, at FRP Payment Plan ("Inmate Decision: AGREED $25.00 Frequency: QUARTERLY"), dkt. 14-1 at 2 *with* Individualized Needs Plan–Program Review, Dec. 7, 2022 ("Sentry Data as of 12-22-2022") at FRP Payment Plan ("Inmate Decision: AGREED $1,300.00 Frequency: QUARTERLY"), dkt. 10-1 at 55. *And see* 28 C.F.R. § 545.11(d)(11) (prisoners who refuse IFRP payments are ineligible for RDAP credit).

8. Respondent thus induced a $1,300 deposit into Petitioner's trust account on February 20, 2023, under transaction no. 70177803, in order to comply with the IFRP payment then scheduled for the first Friday in March 2023.

9. IFRP operates by contract between a prisoner and the BOP: "Unit Management staff enter inmate obligation data and generate a SENTRY IFRP contract" that "includes the payment terms agreed upon and is signed by the inmate." U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement 4500.12 Trust Fund/Deposit Fund Manual (hereinafter "BOP Trust Man.") at § 11.4 (Mar. 14, 2018). "Unit Management staff ensure that each contract contains cycle type, *cycle period*, payment terms, and signatures before establishing the contract in SENTRY." *Id.* at § 11.6(a) (emphasis added).

10. IFRP is reviewed "[a]t each program review." U.S. Dep't of Justice, Fed. Bureau of Pris-

ons, Program Statement 5380.08 Financial Responsibility Program, Inmate (hereinafter "BOP IFRP Man.") at ch. 8(b) (Aug. 15, 2005). Generally speaking, a prisoner has a program review every six months, at the most frequent. Cf. 28 C.F.R. § 524.11(a)(2) ("Inmates will receive a program review at least once every 180 days"). Thus, the IFRP contract term, or "cycle period," is six months, and certainly no shorter a time than six months.

11. On February 24, 2023, Petitioner had no program review and his agreement to increase his IFRP schedule from $25 per quarter, as it had been at USP Marion, was less than six months old.

12. Petitioner was, on February 24, 2023, still within the previous IFRP contract term, and, as stated, four days had passed since the $1,300 deposit that Respondent had induced into Petitioner's trust account to comply with the scheduled March 2023 IFRP payment.

13. Petitioner was not approached on February 24, 2023, by his unit manager to discuss the IFRP. See BOP IFRP Man. at ch. 8(b) ("The Unit Manager is the determining authority when it comes to deciding whether an inmate's IFRP payments are commensurate with his/her ability to pay") ("This decision is solely at the discretion of the Unit Manager and is to be decided on a case-by-case basis").

14. Instead Petitioner was summoned by agent of Respondent, D-unit Case Manager Mr. B. Klink, who is the incorrect official to handle the IFRP.

15. On February 24, 2023, Klink, in turn, claimed another official, not the unit manager, had ordered Petitioner's IFRP schedule again increased to $750 per month, i.e. $2,250 per quarter. See U.S. Dep't of Justice, Fed. Bureau of Prisons, Inmate Request to Staff ("cop-out") re preservation of audio and video surveillance, Exh. 1.

16. Petitioner told Klink that the $1,300 deposit was made expressly to meet Respondent's previous $1,300 quarterly demand in time for the March 2023 payment. Id.

17. Klink directly told Petitioner the increased demand was made exactly "for that reason." Id.

18. But under Respondent's own policy funds used to make IFRP payments, as the $1,300 deposit would have been used to do, are exempted from IFRP calculations. BOP IFRP Man. at ch. 8(b).

19. Again, Petitioner signed the IFRP contract "under duress" to maintain his RDAP eligibility

during the pendancy of this case. *See* IFRP Contract, Feb. 24, 2023, Exh. 2 (signed "under duress").

20. Petitioner forthwith began the remedy process:

Upon my return to FCI-THA I signed under duress a new IFRP contract and expected to make a $1,300 payment on 01 MAR. 2023. After exactly $1,300 was deposited into my trust account on 20 FEB. 2023 under transaction no. 70177803, the BOP on 24 FEB. 2023 *sua sponte* and before the contract term had expired, recalculated my IFRP contract, using the $1,300 deposit it had already induced me to have made to increase my payment schedule from quarterly to $[750] per month. Meanwhile TRULINCS continues to reflect my "Funds considered for FRP payments" as "0.00." Under policy my IFRP schedule is solely at the unit manager's discretion. *See* [BOP IFRP Man.]. And funds used to make IFRP payments are expressly excluded from the funds used to calculate payment schedules. *Id.*

Informal Resolution ("BP-8"), Exh. 3.

21. That "BP-8" has gone unanswered and there is no reason to expect it to be treated differently than Petitioner's other relevant remedies that have been ignored, illegitimately rejected or misconstrued while spurring further retaliation by Respondent against Petitioner's litigation and other protected conduct. *See, in toto*, Amended Petition, dkt. 10-1 (incorporating the ERJ Decl.) (other citations omitted).

22. The Court graciously extended Respondent's time to answer beyond the statutory limitation and Respondent has used that time to continue retaliating against Petitioner, and, now, effectively, against Petitioner's family, because no prison job Respondent offers pays close to the $750 per month he now demands to maintain Petitioner's RDAP eligibility. No written contract is honored in Respondent's continued quest to prove to Petitioner that no court ever can or will curtail Respondent's misconduct. But, "If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez v. Garland*, 593 U.S. ___, ___, 209 L.Ed.2d 433, 448 (2021) (Gorsuch, J., majority).

23. Because Respondent uses the time the Court gave him in excess of the relevant statutory limit wholly illegitimately, Petitioner renews or supplements his objections to that excess time and to any extension Respondent may seek lest further prejudice accrue against Petitioner from Respondents actions an inactions.

I verify that the foregoing is true and correct under the penalty of perjury under the laws of The United States of America. 28 U.S.C. §§ 1746, 2242. Executed and filed March 1, 2023, under the prison-mailbox rule, *Houston v. Lack*, 487 U.S. 266 (1988), by mailing to the Court in an envelope bearing sufficient affixed pre-paid First Class U.S. postage, handed at the next opportunity to Ms. Jamie Wheeler of the FCI Terre Haute D-unit team in her official capacity as an agent of Respondent and of his counsel,

by:
Martin Gottesfeld, *pro se.*
Reg. no. 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

## CERTIFICATE OF SERVICE

I, Martin Gottesfeld, *pro se*, certify that on March 1, 2023, or my first opportunity thereafter I caused a digital copy of the foregoing document to be served upon Respondent in the above-captioned case and upon his counsel; *see* 28 C.F.R. § 540.203 (mail to U.S. courts and judges is read for contents),

by:
Martin Gottesfeld.