UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MARTIN GOTTESFELD, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Cause No. 2:22-cv-00571-JRS-MJD |
| | ) |
| T. RULE Warden, | ) |
| | ) |
| Respondent. | ) |

**RETURN TO ORDER TO SHOW CAUSE**

Petitioner Martin Gottesfeld is currently in the custody of the Federal Bureau of Prisons ("BOP" or "Bureau") and is due to be released to a Residential Reentry Center or "halfway house" on May 23, 2023. On January 12, 2023, he filed a 54 page amended "Petition for Writ of Habeas Corpus" under 28 U.S.C. § 2241 ("Petition") in which he raises a host of unrelated claims. Dkt. 12. In sum, Gottesfeld seeks: 1) additional credit time under the First Step Act of 2018 ("FSA"); 2) a one-year reduction in his sentence by one year for allegedly being denied participation in the Bureau's Residential Drug Abuse Program ("RDAP"); and, 3) to challenge sanctions imposed as discipline for three separate incidents. *See* Dkt. 1 at 1. His Petition should be denied.

**I.    FACTUAL & PROCEDURAL BACKGROUND**

Gottesfeld is currently serving a 121-month term of incarceration followed by a 3-year term of supervision, following his conviction in the United States District Court for the District of Massachusetts for Fraud, Conspiracy, and Intentional Damage to a Protected Computer in violation of Title 18, United States Code, Sections 371, 1030(A), and 1030(C)(4)(B). Exh. 1 (Declaration of Case Management Coordinator F. Roshto) at ¶ 5; Exh. 1, Attachment 1 (Sentence

Monitoring Computation Data) at 2.  He was also ordered to pay $442, 930.00 in restitution.  Exh. 1, Attachment 1 at 2.  Gottesfeld has a projected release date of November 15, 2023, a full-term release date of March 19, 2026, and is currently designated to the Federal Correctional Institution in Terre Haute, Indiana (FCI – Terre Haute).  *Id*.  He is scheduled for release to Coolidge House in Boston, Massachusetts (a Residential Reentry Center or "halfway house") on May 23, 2023.  Exh. 1 at ¶ 13.  Exh. 1, Attachment 9 (Inmate History Destination) at 2.

On December 9, 2022, Gottesfeld filed a petition pursuant to 28 U.S.C. § 2241, and an amended petition on January 12, 2023.  Dkt 1, 12.  The Court ordered Respondent to show cause as to why the relief sought by Gottesfeld should not be granted.  Dkt. 15, 25.

## II.     ARGUMENT

### A.     Gottesfeld's Time Credits under the FSA Have Been Correctly Calculated.

Gottesfeld claims that he has not been awarded FSA time credits that he has earned.  *See* Dkt. 12 at 1, 5-11.  As set forth below, Gottesfeld – despite previously being unable to earn or apply credits due to his refusal to participate in the Inmate Financial Responsibility Plan ("IFRP") – has received all credits to which he is entitled, which amounts to the maximum allowable one year reduction in his total sentence.

Under the FSA, Inmates are assigned to Evidence-based Recidivism Reduction ("EBRR") Programs and Productive Activities ("PAs") based on an individualized risk and needs assessment.  28 C.F.R. § 523.40(b).  An eligible inmate may earn ETCs "for programming and activities in which he or she participated from December 21, 2018[,] until January 14, 2020."  28 C.F.R. § 523.42(b).  On or after January 15, 2020, an eligible inmate may earn ETCs "if he or she is successfully participating in EBRR programs or PAs that BOP has recommended based on the inmate's individualized risk and needs assessment."  *Id*.   Inmates rated at a low or minimum

2

risk of recidivism will earn 15 days of credits for every 30 days they successfully participate in programming, and individuals rated at a medium or high risk of recidivism will earn 10 days of credits for every 30 days that they successfully participate in programming. 28 C.F.R. § 523.42(c).

Only the first 365 days of ETCs is applied to early release. Any remaining ETCs above the 365 days applied to early release is applied to pre-release custody. 18 U.S.C. § 3624(g)(3); Program Statement 5440.0 at 11.

There are also guidelines for loss of time credits and restoration. To be eligible for application of FSA time credits an inmate must (1) have demonstrated a recidivism risk reduction or maintained a minimum or low recidivism risk; and (2) have earned time credits "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1); 28 C.F.R. § 523.44.

The Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"), which is used to accurately measure an inmate's change during incarceration and provide opportunities to reduce risk scores during periodic reassessments, assigns point values based on the following inmate characters: (1) current age; (2) sex offender status ("Walsh w/Conviction"); (3) whether the inmate has a violent offense; (4) criminal history points from the presentence investigation report; (5) history of escape; (6) history of violence; (7) whether the inmate has a high school diploma or GED or is working toward a GED; (8) whether drug programming is needed, and if so, what programming has been completed; (9) number of incident reports; (10) number of serious incident reports; (11) time since last incident report; (12) time since last serious incident report; (13) whether the inmate is refusing to participate in the Inmate Financial Responsibility Program; (14) number of programs completed; and (15) number of work

programs. Available at https://www.bop.gov/inmates/fsa/pattern.jsp. Each level of recidivism risk is assigned a range of total points depending on gender and whether the inmate was convicted of a violent offense. A PATTERN score is not designed to be static. Inmates will be periodically assessed. 18 U.S.C. § 3632(a)(4). Currently, the BOP updates PATTERN scores every 180 days, or 90 days, depending on the inmate's projected release. Exh. 1 at ¶ 10.

      To actualize the benefits of FTCs, an inmate must: 1) actually earn the credit through appropriate programming offered within the BOP, and 2) be eligible or to otherwise maintain eligibility to have the time credit actually applied. *See* 28 C.F.R § 523.42 (outlining the earning of FSA Time Credits); 28 C.F.R. § 523.44 (limiting application of FTCs to eligible inmates who have, in addition to satisfying other criteria, "a demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk during the term of imprisonment.") Title 28 C.F.R § 523.41(c) clarifies that inmates must be "successfully participating in" in EBRR programs or PAs in order to earn FSA Time Credits for those EBRR programs or PAs. Furthermore, on July 14, 2021, while the BOP was in the "phase-in" period for implementing the incentive provisions of the FSA under 18 U.S.C. § 3621(h)(2)-(3), BOP Program Statement 5220.01 was published to "ensure the Bureau of Prisons properly implements provisions of the First Step Act of 2018 requiring the establishment of incentives for successful participation in recommended programs. *See* Bureau of Prisons Program Statement 5220.01, First Step Act Program Incentives. This program statement was written in response to 18 U.S.C. § 3632, directing the Director of the Bureau of Prisons to develop additional policies regarding incentives, time credit applications, and penalties. Program Statement 5220.01 states that "Inmates who refuse to participate in in the Inmate Financial Responsibility Program ("IFRP") shall not receive incentive awards for participation/completion in EBRR's while on refuse status." *Id*. at 6.

The IFRP was created to encourage "each sentenced inmate to meet his or her legitimate financial obligation." 28 C.F.R. § 545.10.  When an inmate has a financial obligation, BOP staff "shall help that inmate develop a financial plan and shall monitor the inmate's progress in meeting that obligation. 28 C.F.R. § 545.11.  The IFRP directs that a financial plan be developed so that the inmate's obligations are satisfied in the following priority: (1) Special Assessments; (2) court-ordered restitution; (3) fines and court costs; (4) state or local obligations; and (5) other federal government obligations. 28 C.F.R. § 545.11(a).  "The inmate is responsible for making satisfactory progress in meeting his/her financial responsibility plan and for providing documentation of the payments to unit staff." 28 C.F.R. § 545.11(b).  Participation in IFRP is voluntary; however, if an inmate refuses to participate there are enumerated consequences.  *See* 28 C.F.R. § 545.11(d).

> Refusal by an inmate to participate in the financial responsibility program or to comply with the provisions of his financial plan ordinarily shall result in the following: (1) Where applicable, the Parole Commission will be notified of the inmate's failure to participate; (2) The inmate will not receive any furlough (other than possibly an emergency or medical furlough); (3) The inmate will not receive performance pay above the maintenance pay level, or bonus pay, or vacation pay; (4) The inmate will not be assigned to any work detail outside the secure perimeter of the facility; (5) The inmate will not be placed in UNICOR. Any inmate assigned to UNICOR, who fails to make adequate progress on his/her financial plan will be removed from UNICOR, and once removed, may not be placed on a UNICOR wait list for six months. Any exceptions to this require approval of the Warden; (6) The inmate shall be subject to a monthly commissary spending limitation more stringent than the monthly commissary spending limitation set for all inmates. This more stringent commissary spending limitation for IFRP refuses shall be at least $25 per month, excluding the purchases of stamps, telephone credits, and, if the inmate is a common fare participant, Kosher/Halal certified shelf-stable entrees to the extent that such purchases are allowable under pertinent Bureau regulations; (7) The inmate will be quartered in the lowest housing status (dormitory, double bunking, etc.); (8) The inmate will not be placed in a community-based program; (9)

5

> The inmate will not receive a release gratuity unless approved by the Warden; (10) [Reserved]; (11) The inmate will not receive participation in residential drug treatment programs.

28 C.F.R. § 545.11(d)(1)-(11); *See also*, Program Statement 5380.08, Inmate Financial Responsibility Program.

When an inmate has a financial obligation, unit staff help the inmate develop a plan and monitor the progress in meeting that obligation using all documentation available. Exh. 1 at ¶ 12. In accordance with Program Statement 5380.08, payment under the IFRP is determined based upon deposits an inmate has in his trust fund account. *Id*. at 7. Payment is re-evaluated every six months based upon trust fund account deposits so that payment adjustments can be made if necessary. *Id*.

As a threshold matter, Gottesfeld was determined to be eligible to earn FTCs under 18 U.S.C. § 3632(d). He is currently scored as a Low on the PATTERN Risk Tool. Exh. 1 at ¶ 6; Exh. 1, Attachment 2 (SENTRY Inmate First Step Act History).

However, Gottesfeld refused to participate in the IFRP program on March 9, 2021, and was thus placed in IFRP refuse status. Exh. 1 at ¶ 12; Exh. 1, Attachment 4 (SENTRY Inmate Financial Responsibility History); Exh. 1, Attachment 5 (Inmate Financial Plan Refusal dated April 9, 2021); Exh. 1, Attachment 6, (SENTRY Inmate Financial Responsibility - Display Inmate Financial Plan. On November 18, 2022, Inmates were notified that there would be a grace period until December 31, 2022, for inmates to complete their needs assessment and address any declined programs, which included the IFRP. Exh. 1 at ¶ 7; Exh. 1, Attachment 3, (Inmate Message, First Step Act Time Credits Calculation dated November 18, 2022). Gottesfeld remained in IFRP Refuse status until January 31, 2022. Exh. 1 at ¶ 12; Exh. 1, Attachment 4.

Following the grace period, a review of Gottesfeld's most recent FSA Time Credit Assessment indicates that despite prior time in IFRP refusal status, he has now earned a total of 415 days of credit. Exh. 1 at ¶ 13; Exh. 1, Attachment 7 (FSA Time Credit Assessment dated February 11, 2023). Of those, 365 days – the maximum allowed pursuant to 18 U.S.C. § 3624(g)(3) and Program Statement 5440.0 – have been applied toward his early release and the remaining 50 have been applied toward placement in pre-release custody. *Id.* Accordingly, Gottesfeld's FSA time credits have been correctly calculated and his claims should be denied.

**B.      Gottesfeld Was Not Entitled to Participate in the Bureau's Residential Drug Abuse Program.**

Gottesfeld also seeks a one-year reduction in his sentence for allegedly being deprived of participation in BOP's Residential Drug Abuse Program ("RDAP"). Dkt. 12 at 1, 11-18. Following several years on the drug education waitlist, Gottesfeld was determined qualified for Residential Drug Treatment on April 20, 2022. *See* Exh. 1, Attachment 8 (SENTRY Inmate Drug Programs History). Pursuant to Program Statement 5330.11 (Psychology Drug Programs), referral to RDAP can occur when they generally have no less than 24 months from release. Gottesfeld will be released to a Residential Reentry Center on May 23, 2023, and thus would be unable to fully participate in RDAP prior to his release. *Id.*; Exh. 1, Attachment 8; Exh. 1, Attachment 9 (SENTRY Inmate Destination History).

The Due Process Clause does not provide a liberty interest in being released before the expiration of the full term of an otherwise valid term of imprisonment. *See Greenholtz v. Inmates of Nebr. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). Under 18 U.S.C. § 3621(e)(2)(B), Congress delegated to the BOP broad discretion to grant or deny the one-year reduction to eligible prisoners upon successful completion of

7

RDAP. *Lopez v. Davis*, 531 U.S. 220, 241 (2001) ("When an eligible prisoner successfully completes drug treatment, the Bureau thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment.").

Congress further specified that the BOP's discretionary determinations made pursuant to § 3621 are not subject to judicial review under the Administrative Procedures Act. 18 U.S.C. § 3625. *See, e.g., Solis v. Bell*, No. 2:18-cv-00113-JMS-MJD, 2019 WL 535694, at *3 (S.D. Ind. Feb. 11, 2019). As decisions about participation in RDAP rests entirely with the Bureau, *see Tapia v. United States*, 564 U.S. 319, 330–31 (2011); *United States v. Martinez*, 738 F. App'x 361, 365 (7th Cir. 2018), this claim also fails.

### C.  Gottesfeld's Challenges to Multiple Disciplinary Sanctions for Unrelated Incident Report Cannot be Raised in a Single § 2241 Petition.

Gottesfeld also attempts to lump together challenges to three separate disciplinary sanctions resulting in the loss of good time credit. Dkt. 12 at 1, 18-53. However, he may not do so in a single § 2241 filing because each disciplinary proceeding that is challenged has the status of a separate "court" proceeding though there may be common claims, the proceedings must be challenged separately. *See* Rule 2(e) of the Rules Governing Section 2254 Cases in the United States District Courts (providing that "a petitioner who seeks relief from judgments of more than one state court must file a separate petition covering the judgment or judgments of each court") (applicable to § 2241petitions under Rule 1(b)); *see also Boriboune v. Berge*, 391 F.3d 852, 854 (7th Cir. 2004) ("[E]ach petition must be directed to a single criminal judgment."); *Chestnut v. Daniels*, 2:17-cv-19-WTL-DLP, 2018 WL 3831441, *1 (S.D. Ind. Aug. 13, 2018) (noting that the petition challenging 18 separate disciplinary proceedings was severed into 18 separate cases). Accordingly, the Court should deny without prejudice all claims related to disciplinary sanctions and issue an order directing Gottesfeld to challenge those sanctions in separate actions.

### III. CONCLUSION

For the foregoing reasons, the Court should deny Martin Gottesfeld's Petition.

Respectfully submitted,

ZACHARY A. MYERS
United States Attorney

By:    */s/ Jeffrey D. Preston*
       Jeffrey D. Preston
       Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2023, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

I further certify that on April 28, 2023, a copy of the foregoing was mailed, by first-class U.S. Mail, postage prepaid and properly addressed to the following:

MARTIN GOTTESFELD
12982-104
TERRE HAUTE - FCI
TERRE HAUTE FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

                                                           By:   */s/ Jeffrey D. Preston*
                                                                        Jeffrey D. Preston
                                                                         Assistant United States Attorney

Office of the United States Attorney
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, IN 46204
Telephone:  (317) 226-6333