IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MARTIN GOTTESFELD, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>T. RULE, )<br>)<br>Respondent. )<br>) | Case No. 2:22-cv-00571-JRS-MJD |

**EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

COMES NOW Petitioner, by and through counsel, to seek an emergency order from the Court mandating his immediate release to community confinement, pursuant to his undisputed statutory right to be released no later than May 23, 2023, and enjoining Respondent from placing him on IFRP refusal status prior to his release to community confinement. Every day Petitioner remains confined in federal prison after May 23—acknowledged by Respondent as a date when Petitioner's federal statutory right to be released was triggered—Respondent is causing irreparable harm to Petitioner's constitutional "liberty interests" and taking action that threatens further irreparable harm, including the imminent harm of being placed on IFRP refusal status.

WHEREFORE, for these reasons and those detailed in the supporting Memorandum and Declarations, Petitioner respectfully requests the Court

Dated: May 26, 2023

Respectfully submitted:

/s/ Natalie A. Lyons
Natalie A. Lyons, No. 36583-32
COHEN & MALAD, LLP
One Indiana Square, Suite 1400

Indianapolis, IN 46204
(317) 636-6481
nlyons@cohenandmalad.com

## MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR
## TEMPORARY RESTRAINING ORDER

Petitioner Martin Gottesfeld ("Mr. Gottesfeld") respectfully seeks immediate release to community confinement and an order enjoining Respondent from placing Mr. Gottesfeld on IFRP refusal status prior to his release to community confinement. Pursuant to his earned credit time under the First Step Act, Mr. Gottesfeld was scheduled for release to community confinement on May 23, 2023.[1] As a result of numerous failures by Respondent and the Federal Bureau of Prisons ("BOP"), Mr. Gottesfeld remains incarcerated at the Federal Correctional Institution in Terre Haute ("FCI – Terre Haute") in violation of his statutory and due process rights. Every day Mr. Gottesfeld is incarcerated at FCI – Terre Haute longer than he should have been is an irreparable injury in the Seventh Circuit and beyond.

Moreover, every day that Mr. Gottesfeld remains incarcerated at FCI – Terre Haute past his scheduled release on May 23, he is suffering additional deprivations, including lack of access to his legal documents and the law library, and no access to the money in his prison trust account. Most notably, because he remains incarcerated, he will be required to make another monthly contribution to the Inmate Financial Responsibility Program ("IFRP") on Friday, June 2, 2023. Not only would this IFRP payment be unnecessary but for his prolonged incarceration at FCI – Terre Haute, but also BOP's closing of his account means that Mr. Gottesfeld will not be able to pay the monthly IFRP obligation and could thereby be placed on IFRP refusal status, further prolonging his release to community confinement and subjecting him to numerous other penalties.

---

[1] Mr. Gottesfeld does not concede May 23, 2023 was the proper date for his release to community confinement, but for purposes of this emergency motion, maintains he began suffering irreparable harm at least as early as May 23, 2023 when Respondent failed to release him.

1

For the reasons set forth herein, Mr. Gottesfeld respectfully requests an order requiring his immediate release to community confinement.

## BACKGROUND

On Monday, May 22, 2023, Mr. Gottesfeld was to be released from the custody of FCI – Terre Haute in order to travel to Boston, Massachusetts and begin his statutorily mandated release to community confinement on May 23, 2023—as confirmed by the Furlough Application Approval papers issued by the U.S. Department of Justice ("DOJ") and BOP, as well as several staff at FCI – Terre Haute and staff at the Residential Reentry Center designated by BOP to inspect the home of Mr. Gottesfeld's wife for his eventual home detention. But Mr. Gottesfeld never left FCI – Terre Haute, and as of the filing of this Motion, he remains there.

As acknowledged by Respondent, Mr. Gottesfeld was "scheduled for release to the Coolidge House in Boston, Massachusetts (a Residential Reentry Center or 'halfway house') on May 23, 2023." Doc. 27 ("Response") at 2. This is pursuant to Mr. Gottesfeld's undisputed earned time credit under the First Step Act. *Compare* Doc. 27-1 ("BOP Dec.") at ¶ 13 (BOP declarant attesting that Mr. Gottesfeld "has earned a total of 415 days" of FSA Time Credit and "365 have been applied toward [his] early release and the remaining 50 have been applied toward placement in pre-release custody"), *with* Response at 3 (noting the "first 365 days of [earned time credits] [are] applied to early release" and remaining credits are applied to pre-release custody); 18 U.S.C. § 3632(d)(4)(C) ("Time credits earned . . . *shall* be applied toward time in prerelease custody or supervised release.") (emphasis added).[2] Thus, BOP was required to ensure his release to community confinement no later than May 23, 2023.

---

[2] While Mr. Gottesfeld does not concur with Respondent's assertions regarding the total earned credit time that is due to him, he merely points the Court to the lack of dispute between the parties that he was due to be released *no later than* May 23, 2023.

2

On May 22, 2023 the undersigned counsel met with Mr. Gottesfeld at FCI – Terre Haute, and in her presence, correctional staff confirmed that Mr. Gottesfeld was scheduled to leave the facility at 2:00pm to be transported to the Greyhound bus station for transport to Boston, Massachusetts. Declaration of Natalie Lyons ("Lyons Dec.") at ¶ 3. DOJ and BOP Furlough Paperwork presented to Mr. Gottesfeld and provided by him to counsel confirm that he was to leave FCI – Terre Haute on May 22, 2023; a Greyhound bus ticket had been purchased for his transport to Boston; and his destination was Coolidge House RRC, 307 Huntington Avenue, Boston, MA 02115. *Id.* at ¶¶ 4-5, Ex. A. It is notable that, while Mr. Gottesfeld was informed, on or around May 22, 2023, that he would eventually be permitted to serve his community confinement in "home confinement," he had not been informed of this plan earlier, and there is no mention of home confinement in the Furlough Application approval papers issued by the DOJ and BOP. *Id.* at ¶¶ 6-7; Ex. A.

Later on May 22, counsel received an email from a "unit manager" of Mr. Gottesfeld's CMU unit at FCI – Terre Haute stating that "Inmate Gottesfeld will not be leaving today" and that his date for "Home Confinement was removed and changed to June 7, 2023." *Id.* at ¶ 8. The reason given for the delay was that "his sponsor (his wife) was not home for the home to be inspected," and thus, "the date was pushed back to allow time to inspect the address." *Id.* This reasoning was subsequently reiterated to the undersigned counsel by counsel for the Respondent in a phone call on May 25, 2023. *Id.* at ¶ 15.

But BOP has long known of its intention to release Mr. Gottesfeld to home confinement at his wife's location, and it nonetheless waited till May 22, 2023—the day of his planned release from FCI – Terre Haute—to contact Ms. Gottesfeld for purposes of conducting a *same-day inspection* of her home. As described to Mr. Gottesfeld by his case manager at FCI – Terre Haute,

3

he has been designated for home confinement since March 2023. *Id.* at ¶ 6. Additionally, an employee of the Residential Reentry division of BOP acknowledged that it had known about this designation for "awhile." *Id.* at ¶ 9. Finally, an employee for the Residential Reentry Center ("RRC") assigned by BOP to conduct the inspection of Ms. Gottesfeld's home confirmed that the RRC knew of the necessity to conduct the inspection for at least several days prior to May 22, 2023. Declaration of Dana Gottesfeld ("D. Gottesfeld Dec.") at ¶ 6. Yet, the RRC inspector who was assigned to conduct the home inspection *did not call Ms. Gottesfeld* to schedule it until the morning of May 22, 2023 for purposes of scheduling the inspection that *very same day*. *Id.* at ¶ 4. Ms. Gottesfeld was out of town on May 22, but she informed the inspector that she could be available at any time on May 23 to conduct the home inspection. *Id.* She has been available for the home inspection since May 23, but no such inspection has been conducted. *Id.* at ¶ 7.

In several communications with undersigned counsel over this past week, Respondent, BOP, DOJ and the RRC have failed to provide any explanation for why: (1) it did not attempt to schedule the home inspection before May 22, 2023, the day on which Mr. Gottesfeld was scheduled to leave FCI – Terre Haute, and (2) it did not proceed with the plan to confine Mr. Gottesfeld at the Coolidge House until the home inspection could be conducted, as his case manager and unit manager at FCI – Terre Haute had indicated was the plan and as Respondent represented to this Court was the plan. Lyons Dec. at ¶¶ 8-11, 13-16; Ex. A; Response at 1-2. Thus, on Wednesday, May 24, undersigned counsel sent notice to counsel for BOP and Respondent that their continued incarceration of Mr. Gottesfeld at FCI – Terre Haute violates his statutory and due process rights and if his release was not expedited, counsel would take necessary action to thwart this continuing violation of his federal and constitutional rights. *Id.* at ¶ 11.

4

Also, on Wednesday, May 24, undersigned counsel conducted a legal call with Mr. Gottesfeld where she learned from him that he does not have access to his numerous legal documents or the legal library and that his prison trust account had been cashed out and closed. *Id.* at ¶ 12. Because his IFRP monthly payments are due on the first Friday of every month, his newly scheduled date for release (June 7, 2023) will necessitate an IFRP payment on Friday, June 2, one that he would not otherwise be required to make. *Id.* Furthermore, because BOP has closed out his prison trust account, he will be unable to make that payment—which could be as much as $750.00—and could then be placed on IFRP refusal status.[3] *Id.*; D. Gottesfeld Dec. ¶ 8.

Nor was Mr. Gottesfeld provided any opportunity to be heard before his transfer was rescheduled to June 7, 2023. *Id.* at ¶ 12. The decision was made unilaterally, and all communications between him and his counsel with DOJ, BOP and the RCC have been for the purposes of mitigating the harm. *See generally id.*

On Thursday, May 25, 2023, counsel for Respondent as well as an employee for the Residential Reentry Management division of BOP communicated to undersigned counsel that the inspection of Ms. Gottesfeld's home was now scheduled for May 29, 2023. *Id.* at ¶¶ 14-15. But notwithstanding counsel's explicit and repeated requests for confirmation of Mr. Gottesfeld's expedited release, through revised furlough approval papers and booked transportation, Respondent's counsel stated on May 26, 2023 via email that "there is no further confirmation they can provide at this time." *Id.* at ¶ 17. In other words, Respondent has not indicated whether Mr. Gottesfeld has a release date sooner than June 7 pending the home inspection. *Id.* at ¶ 18.

---

[3] If Mr. Gottesfeld does not make a required IFRP payment, he will be placed in IFRP refusal status and subject to numerous penalties, including a ban on release to community or home confinement. 28 C.F.R. § 545.11(d) (listing consequences of refusing to participate in IFRP).

5

In light of the foregoing pattern—including repeated mischaracterizations of BOP's efforts to schedule and conduct the home inspection—of unlawfully and unconstitutionally delaying Mr. Gottesfeld's release to community confinement, and without credible assurances that release is imminent, Mr. Gottesfeld seeks Court intervention to prevent further deprivation of his undisputed and present rights.

**ARGUMENT**

The standard for issuing a temporary restraining order is identical to that governing issuance of a preliminary injunction. *FitzMark, Inc. v. Campbell*, No. 1:20-cv-02183-JMS-MPB, 2020 WL 6888465, at *1 (S.D. Ind. Oct. 29, 2020). The movant must show "(1) a likelihood of success on the merits; (2) a lack of an adequate remedy at law; and (3) an irreparable harm will result if the injunction is not granted." *Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007) (quoting *Foodcomm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003)). Once the movant clears this threshold, then, "the court must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction, and consider whether an injunction is in the public interest." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (quoting *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 816 (7th Cir. 2018), *vacated and remanded on other grounds*, 141 S.Ct. 184 (2020)).

Mr. Gottesfeld is likely to succeed on the due process and statutory claims asserted in his habeas petition and supplemental petition, Docs. 1, 13-1; and immediate release from FCI – Terre Haute to community confinement and an order preventing Respondent from placing Mr. Gottesfeld in IFRP refusal status will mitigate further irreparable constitutional harms Mr. Gottesfeld has suffered and continues to suffer from BOP's failure to release him to community confinement on

the *undisputed date* when his statutory right to such release began.[4] Every day that Mr. Gottesfeld remains unlawfully incarcerated at FCI – Terre Haute amounts to irreparable harm and that harm will only increase if Mr. Gottesfeld remains incarcerated through the scheduled June 7, 2023 date, which would necessitate an IFRP payment he cannot make and thus, render him subject to IFRP refusal status, constituting further punishment solely by virtue of BOP's inexcusable recklessness with regard to his statutory and constitutional rights.

I. **Mr. Gottesfeld Is Likely to Succeed on the Merits**

    **A. Mr. Gottesfeld Was Denied Procedural Due Process When His Community Confinement Was Arbitrarily Postponed**

Mr. Gottesfeld has a liberty interest in being free from arbitrary revocation of community confinement. *See Young v. Harper*, 520 U.S. 143, 147 (1997) (holding that incarcerated person had liberty interest in remaining on pre-parole conditional supervision status); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (holding that parolees have liberty interest in remaining on parole); *Tracy v. Salamack*, 572 F.2d 393, 395-96 (2d Cir. 1978) (finding liberty interest in remaining in pre-parole "temporary release"); *Freeman v. Pullen*, No. 3:22-cv-1567 (OAW), 2023 WL 2329526, at *4-8 (D. Conn. Mar. 2, 2023) (finding liberty interest in remaining on home confinement); *Tompkins v. Pullen*, No. 3:22-cv-00339 (OAW), 2022 WL 3212368, at *8-11 (D. Conn. Aug. 9, 2022) (same); *Liska v. Dart*, 60 F. Supp. 3d 889, 899 (N.D. Ill. July 23, 2014) (collecting cases holding that prisoners have a liberty interest in home confinement and concluding that a person in pretrial detention has a liberty interest in home confinement).

---

[4] Mr. Gottesfeld's habeas petition will not be moot upon his release to community confinement. He will continue to suffer harm as a result of Respondent's retaliation against him, failure to calculate his sentence correctly, and denial of his access to the Residential Drug Abuse Program ("RDAP"). *See* Doc. 1; Doc. 13-1. However, given the last week's developments, Mr. Gottesfeld only seeks emergency relief at this time in the form of immediate release to community confinement and an injunction against placing him in IFRP refusal status.

Here, Mr. Gottesfeld was scheduled for release to community confinement on May 23, 2023, a representation Respondent made unequivocally in his responsive brief filed in this habeas proceeding. Response at 2; BOP Dec. at ¶ 13. As described therein and in the declaration submitted in support, the May 23 release date was based on earned time credit that Mr. Gottesfeld acquired under the First Step Act. *See* Response at 2; BOP Dec. at ¶ 13. While Mr. Gottesfeld has disputed BOP's calculation of his earned time credits, he does not dispute that he has earned *at least* the 415 credits BOP claims he is due. Thus, as stated in Respondent's own briefing, the "first 365 days" of the 415 days that Mr. Gottesfeld has assuredly earned (as acknowledged by BOP) are "applied to early release" and the remaining credits are applied to "pre-release custody." Response at 2-3. There simply is no dispute that Mr. Gottesfeld has a presently existing right under the First Step Act to be placed in community confinement.

Moreover, Respondent and his agents cashed out and closed Mr. Gottesfeld's trust account, boxed up his legal documents, secured a spot for Mr. Gottesfeld at the Coolidge House, and denied Mr. Gottesfeld admission to the RDAP program on the basis that he would not have time to complete it before his release to community confinement on May 23, 2023. *See generally* Lyons Dec. & Ex A; *see also* Response at 2; BOP Dec. at ¶ 14. And now, Mr. Gottesfeld is presently incarcerated at FCI - Terre Haute with no access to his legal documents, no access to the law library, no money, and the threat of having to make an IFRP payment he will not be able to pay. There is ample evidence to show that Mr. Gottesfeld simply could not and should not have expected for his release not to proceed, as scheduled, without cause. *See Freeman*, 2023 WL 2329526, at *7 ("The court has found that there is ample evidence from which an individual reasonably could expect not to be reincarcerated without cause.").

8

Because Mr. Gottesfeld has a liberty interest, he is entitled to procedural due process before his community confinement can be revoked. *See id.* at *8-9; *Morrissey*, 408 U.S. at 485-90. At a minimum, a two-step process is required. First, a preliminary hearing should be held to determine whether there is probable cause to justify his incarceration, with a factfinder who was not involved in initiating the revocation process. *Morrissey*, 408 U.S. at 485-87. Notice of this preliminary hearing must be provided along with the alleged violations to be considered therein. *Id.* at 487. The incarcerated person should have the opportunity to present evidence and defenses, and to testify on his own behalf, if he chooses, and in most cases, there should be an opportunity to cross-examine adverse witnesses. *Id.* The hearing officer should articulate the reasons for her decision and the evidence relied upon, but the findings need not be formal. *Id.*

If probable cause is found, the second step is a revocation hearing. The minimum procedures required are:

> (a) written notice of the alleged violations; (b) disclosure of evidence against the accused; (c) an opportunity for the accused to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and to cross-examine adverse witnesses (unless good cause exists to deny such confrontation); (e) a "neutral and detached" hearing body; and (f) a written statement by the factfinder(s) delineating the result of the hearing, and, if home confinement is revoked, the reasons for such revocation, and the evidence relied upon in arriving at that ruling.

*Freeman*, 2023 WL 2329526, at *9 (citing *Morrissey*, 408 U.S. at 489).

Mr. Gottesfeld received none of these required procedures. He was simply not released to community confinement on the day BOP promised he would be, by no fault of his own.

## II. Mr. Gottesfeld Has and Will Continue to Suffer Irreparable Harm

Mr. Gottesfeld's continued confinement beyond May 23, 2023, the date he was supposed to be released to community confinement according to Respondent and federal law, has and will continue to cause irreparable harm. Indeed, "grave, irreparable harm would be caused to any

9

inmate who was incarcerated beyond his release date." *Caldwell v. Scibana*, No. 04-C-342-C, 2004 WL 1631290, at *1 (W.D. Wisc. July 19, 2004); *see also Nelson v. Cox*, No. 4:20-cv-04199-KES, 2021 WL 1221178, at *2 (D. S.D. Apr. 1, 2021) (holding petitioner "alleged facts to show that requiring him to exhaust his administrative remedies before coming into court would cause him irreparable harm because he is allegedly already entitled to be released from prison"); *McCullough v. Bureau of Prisons*, No. 5:19-cv-639-RMG, 2019 WL 1767393, at *2 (D. S.C. Apr. 22, 2019) (dismissing petition without prejudice for failure to exhaust administrative remedies where there was no showing of irreparable harm, such as a petitioner remaining "incarcerated past his projected release date under the First Step Act"); *Montoya Villagomez v. Knight*, C/A No. 1:21-309-MBS-SVH, 2021 WL 6494745, at *4 (D. S.C. June 16, 2021) (noting that petitioner's argument that "he is entitled to be immediately transferred from BOP custody to pre-release custody" is "arguably an allegation of irreparable harm").

Moreover, Mr. Gottesfeld will suffer irreparable harm if he remains confined at FCI – Terre Haute into June 2023 and placed in IFRP refusal status. Mr. Gottesfeld's prison trust account was cashed out and closed in anticipation of his May 23, 2023 release date; he, therefore, does not have access to any funds to make another IFRP payment, a payment that is likely to be upwards of $750.00. But if the BOP places him in IFRP refusal status for nonpayment, it will harm Mr. Gottesfeld in two ways. First, Mr. Gottesfeld's confinement at FCI – Terre Haute could be further prolonged since denial of furlough and community-based program placement is a prescribed penalty for refusal to participate in IFRP. 28 C.F.R. § 545.11(d) (listing consequences of refusing to participate in IFRP). Second, he could also suffer numerous other penalties, including denial of First Step Act credit accrual, denial of performance pay for any prison jobs, denial of work detail opportunities, imposition of a monthly commissary spending limit, denial of access to RDAP, and

10

placement in the least preferential housing available to him. *Id.*; BOP Dec. ¶¶ 9-11. Moreover, to participate in the IFRP again, Mr. Gottesfeld and his family will presumably be forced to pay $750 per month, as was previously required, an amount that Mr. Gottesfeld has argued was retaliatory and unlawful. Doc. 13-1 ¶ 193; *see generally* Doc. 13-1. All of this because Respondent failed on multiple fronts—despite having ample time and opportunity to succeed—in effectuating Mr. Gottesfeld's May 23, 2023 release to community confinement.

### III. Immediate Release Is the Only Remedy for the Irreparable Harm

Given the total lack of due process afforded to Mr. Gottesfeld, the only remedy is to order his immediate release to community confinement and enjoin Respondent from placing Mr. Gottesfeld on IFRP refusal status. *See Freeman*, 2023 WL 2329526, at *10. No other remedy will suffice to restore Mr. Gottesfeld's liberty interest–or prevent him from experiencing arbitrary punishment for a failure to participate in the IFRP that is wholly beyond his control.

### IV. The Balance of Harms Weighs Heavily in Mr. Gottesfeld's Favor

For the reasons set forth above, Mr. Gottesfeld has made the threshold showing for a temporary restraining order. *Lambert*, 498 F.3d at 451 (7th Cir. 2007). Thus, the Court should proceed to weighing "the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction, and consider whether an injunction is in the public interest.'" *Planned Parenthood of Ind. & Ky., Inc.*, 896 F.3d at 816.

Here, the harm only befalls Mr. Gottesfeld, who remains incarcerated at FCI – Terre Haute even though he was supposed to be released to community confinement days ago. Every day Mr. Gottesfeld remains unlawfully incarcerated is an irreparable injury. *Supra* § II. The government has "an important interest in the timely enforcement of a sentence," but that interest is not in jeopardy here since Respondent's own plan was to release Mr. Gottesfeld, and Respondent cannot

point to any changed circumstances making Mr. Gottesfeld now ineligible for release. *See Hill v. McDonough*, 547 U.S. 573, 584 (2006). Further, Respondent cannot argue that the injunction Mr. Gottesfeld seeks is against the public interest since it would merely effectuate the release plan Respondent told Mr. Gottesfeld and this Court he intended to carry out. Response at 1-2.

## CONCLUSION

Respondent has prolonged Mr. Gottesfeld's incarceration arbitrarily and without providing him any procedural protections. For the reasons set forth herein, the Court should order Mr. Gottesfeld's immediate release to community confinement and enjoin Respondent from placing him on IFRP refusal status prior to his release to community confinement.

Dated: May 26, 2023

Respectfully submitted:

*/s/ Natalie A. Lyons*
Natalie A. Lyons, No. 36583-32
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
(317) 636-6481
nlyons@cohenandmalad.com

## CERTIFICATE OF SERVICE

I hereby certify that, on May 26, 2023, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system.

/s/ *Natalie Lyons*
Natalie Lyons